704 S.W.2d 280 (1986)
STATE of Missouri, Respondent,
v.
Ernest Dean MITCHELL, Appellant.
No. 14046.
Missouri Court of Appeals, Southern District, Division Two.
January 31, 1986.
*281 C.J. Larkin, Columbia, for appellant.
William L. Webster, Atty. Gen., Jefferson City, Nancy K. Yendes, Asst. Atty. Gen., Springfield, for respondent.
CROW, Judge.
Ernest Dean Mitchell ("defendant"), found guilty by a jury of two counts of exhibiting a lethal weapon in an angry or threatening manner, § 571.030.1(4), RSMo Cum.Supp.1983, was sentenced as a persistent offender by the trial court, § 558.016.3, RSMo Cum.Supp.1983, to consecutive terms of imprisonment of four years and three years.
Defendant maintains that inasmuch as the two counts were identically worded in the amended information, the trial court erred in denying his motion for a bill of particulars and his motion to dismiss the amended information.
Defendant also contends that the verdict directing instructions were prejudicially erroneous in that they were "identical in language," thereby subjecting him to "the possibility of double jeopardy," and, in addition, that the instructions "were misleading and confusing to the jury, granted it a roving commission to convict [defendant] and hindered [defendant] in raising the issue of double jeopardy in the event of acquittal."
Lastly, defendant asserts that the trial court should have granted his request for a mistrial because the prosecutor "exceeded the bounds of proper impeachment" in cross-examining a defense witness.
While defendant does not challenge the sufficiency of the evidence to support the verdicts, a brief synopsis is nonetheless required in order to discuss the assignments of error.
The jury could have reasonably found from the evidence that about 6:00 a.m., Saturday, April 14, 1984, defendant went to the home of Jackie Summers in McDonald *282 County[1] and began "beating" on the door. Ms. Summers testified that when she went to the door, defendant "pulled a gun out, stuck it in my face, and told me if I had been Dal or Diane, I'd be dead right now."
Then, according to Ms. Summers: "[H]e put his foot in the door and I backed up a little bit, and my old man was asleep there, he'd been working long hours, and his head was covered up, and the defendant said that this was Dal. He said, `I'll just shoot him now.' I said, no, it wasn't. I told him who it was and asked him to leave. He said, `I should just kill you all.'"
Ms. Summers' children had become frightened by the incident, but she succeeded in calming them and persuading them to return to their bedroom. At that point, defendant backed onto the porch and fired the gun, an automatic ".22 long rifle Ruger," into the yard, whereupon Ms. Summers told defendant that the people he was looking for were not allowed at her home. Defendant then walked away, shot down the driveway, got into a blue Mustang, and departed. Ms. Summers identified "Dal," whom defendant was seeking, as Dal Summers, her brother.
Defendant then appeared at Pearl's Cafe in Noel, asking the proprietress, Clara Yeargain, whether "Diane" had been there, and with whom. Defendant stated that when they came in, he "was going to tear the place up."
Diana Sain and Dal Summers entered the cafe and sat down to have coffee. Defendant thereupon asked Summers "if he was the one that beat up a friend of ours."
Summers denied knowledge of the incident.
Defendant then "jumped up and pulled a gun," a .22 automatic, and pointed it at Summers. Clara Yeargain recalled defendant telling Summers that he "was going to kill him and splatter him all over the floor."
Diana Sain, when asked what defendant said, testified, "I don't remember what was said except that he told him to be out of town by sundown, told him he shouldn't be with me, or something like that."
Ms. Yeargain pushed down defendant's hand which held the pistol. Both men sat down, but exchanged words, and defendant "jumped up again," repeating his threat to kill Summers.
At that point, Diana Sain told defendant that his girl friend was outside (a ruse to induce defendant to leave the cafe). Defendant went outside, discovered his girl friend was not there, and returned inside.
According to Diana Sain, defendant hit Summers "in the back of the head." Summers promptly left the cafe, followed by defendant.
Diana Sain then walked with defendant to "Shadowlake," where defendant hid the pistol. Defendant and Diana then went to Carl's Cafe and had coffee, after which defendant borrowed a car from his cousin, retrieved the pistol at Shadowlake, and drove to "Ginger Blue." There, defendant held the pistol out the car window and fired it several times until it was empty. Defendant later "dropped the gun off" at a cousin's residence in Lanigan.
The original information was filed against defendant on May 15, 1984. It consisted of three counts, the first of which charged defendant with felonious restraint of Diana Sain, § 565.120, RSMo 1978. The second count charged that defendant "[i]n violation of Section 571.030.1(4) RSMo., committed the Class D Felony of Unlawful Use of a Weapon, punishable upon conviction under Sections 558.011.1(4) and 560.011 RSMo., in that on or about the 14th day of April, 1984, in the County of McDonald, State of Missouri, the defendant knowingly exhibited in the presence of one or more persons a pistol, a weapon readily capable of lethal use, in an angry or threatening manner."
The third count was identical to the second count, except that "Section 571.030.1(4)" was erroneously typed "Section 571.010.1(4)" in the third count.
*283 On October 22, 1984, an amended information was filed, charging defendant with the same three crimes. Counts II and III of the amended information were identical with Counts II and III of the original information. The reason for the amended information was to add the allegations necessary to prosecute defendant as a persistent offender.
On the morning of trial, October 31, 1984, defendant filed his motion to dismiss the amended information and his motion for a bill of particulars.
The motion to dismiss was directed toward Counts II and III. It alleged that such counts were "exactly the same and therefore it is impossible for Defendant herein to adequately prepare a defense on said charges." Furthermore, the motion to dismiss asserted that Counts II and III were insufficiently worded so as to prevent defendant from being re-tried on the same charges should he be acquitted.
The motion for a bill of particulars requested, as to Counts II and III, that the State set forth where the respective offenses took place, the time of day they took place, the manner in which defendant knowingly exhibited the weapon, the type weapon that was exhibited, and what acts of defendant constituted an angry or threatening manner.
Prior to voir dire of the jury panel, the prosecuting attorney dismissed Count I. A discussion then occurred regarding defendant's motion to dismiss and his motion for a bill of particulars. Defense counsel stated: "I can't tell which count is which, what evidence is going to relate to Count II, what evidence is going to relate to Count III. How would I ever make a motion for judgment of acquittal on one count when they both read identically the same?"
The trial court thereupon asked the prosecuting attorney whether he agreed that one count applied to one situation and that the other count applied to another set of circumstances.
The prosecuting attorney replied: "I will agree that Count II can be the exhibiting with Jackie Summers, and Count III will be the exhibiting on Dal Summers, but Jackie Summers' testimony will be relevant to both counts, due to the fact that by testimony the gun was fired twice."
Defense counsel opined that the prosecuting attorney should amend the information to reflect what the prosecuting attorney had just stated.
The prosecuting attorney responded: "It's not required; it's not in the language. It's in the direct language of the statute."
The trial court denied the motions.
Thereafter, according to the transcript, the veniremen were brought in and "Instructions" were read. The instructions presumably included MAI-CR 2d 1.02 [1984 Revision]; however, that instruction is not included in the record on appeal. Consequently, we have no way of knowing what the trial court said to the veniremen regarding the two counts upon which defendant was to be tried, nor do we know whether the trial court explained that Count II referred to an incident at Jackie Summers' residence and that Count III referred to an incident at Pearl's Cafe.
The prosecuting attorney, in his opening statement, pointed out that the case was "a two-count charge," and that the "first one we're concerned about occurred at the Jackie Summers residence." The prosecuting attorney did not, however, explain that such incident formed the basis for Count II, nor did the prosecuting attorney explain that the incident at Pearl's Cafe supplied the basis for Count III. Inexplicably, the prosecuting attorney, in outlining the State's case, first described what the evidence would show regarding the incident at Pearl's Cafe, and followed that by describing what the evidence would show as to the incident at Jackie Summers'. Thus, the two incidents were outlined to the jury in the opposite sequence in which they had occurred.
Defense counsel, of course, said nothing to clarify matters in his opening statement.
*284 Evidence was then presented, the highlights of which have already been recounted.
During the instructions conference, Rule 28.02(f), Missouri Rules of Criminal Procedure (15th ed. 1984), the trial court identified the instructions that would be given, which included Instruction 5 and Instruction 6, the verdict directing instructions on Count II and Count III, respectively.
Instruction 5, based on MAI-CR 2d 31.22 [1983 Revision], stated:
"As to COUNT II, if you find and believe from the evidence beyond a reasonable doubt:
FIRST: That on or about the 14th day of April, 1984, in the County of McDonald, State of Missouri, the defendant knowingly exhibited in the presence of one or more persons a pistol, and
SECOND: That he did so in an angry or threatening manner, and
THIRD: That the pistol, was readily capable of lethal use,
then you will find the defendant guilty under COUNT II of exhibiting a lethal weapon in an angry or threatening manner.
However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense."
Instruction 6 was identical to Instruction 5 except that in the two places where Instruction 5 said "COUNT II," Instruction 6 said "COUNT III."
Defense counsel registered his protest, stating: "I'd like to make a specific objection at this time to Instructions number 5 and 6, which are identical instructions, as far as I can tell. And for the reason that there's no way to keep this man from being doublejeopardized [sic] on these, or to tell which crime alleged is which. And I think that the instructions are improper, as well as the information, charging exactly the same thing twice, and I think they are not properly presented."
The trial court overruled the objection.
The instructions were then read to the jury and closing arguments were made. The closing arguments are omitted from the transcript, thus we do not know what, if anything, the prosecuting attorney or defense counsel said regarding which instruction was meant to refer to the incident at Jackie Summers' residence and which instruction was meant to refer to the incident at Pearl's Cafe. It is true, of course, that Instruction 5 referred to Count II and Instruction 6 referred to Count III, but, as observed earlier, we find nothing in the record indicating that it was ever made clear to the jury that Count II was based on the occurrence at Jackie Summers' residence and that Count III was based on the occurrence at Pearl's Cafe.
After the verdicts were returned, defense counsel filed a timely motion for a new trial, carefully preserving the three points now raised in his brief. The motion for new trial was denied, judgment and sentence followed, and defendant perfected this appeal.
We first consider defendant's second point, which assails Instructions 5 and 6. Defendant maintains that because neither instruction refers to either of the incidents of April 14, 1984, mentioned in the evidence, it was impossible for the jury to know which incident was the subject of Instruction 5 and which incident was the subject of Instruction 6. Consequently, says defendant, the jury could not determine which evidence to consider in deciding whether he should be found guilty or innocent under Instruction 5, or which evidence to consider in determining whether he should be found guilty or innocent under Instruction 6.
The State responds by pointing out that (a) Instructions 5 and 6 "track" MAI-CR 2d 31.22 [1983 Revision], and (b) when the proper MAI-CR instruction is given, the Court of Appeals is without power to declare the instruction erroneous. In support of segment "(b)" of its argument, the State cites State v. Bruce, 671 S.W.2d 821, 822[1] *285 (Mo.App.1984); State v. Stevenson, 660 S.W.2d 236, 237[1] (Mo.App.1983); and State v. Grady, 577 S.W.2d 930, 931[1] (Mo.App.1979). While those cases undeniably stand for the proposition for which the State cites them, we note that all are decisions of the Court of Appeals. We find no decision by the Supreme Court of Missouri holding that the Court of Appeals lacks authority to brand erroneous an MAI-CR instruction adopted for general use by the Supreme Court of Missouri. For the reasons that follow, however, we do not reach that question, as we are able to rule defendant's second point without passing on the correctness of MAI-CR 2d 31.22 [1983 Revision].
MAI-CR 2d 17.00 Supplemental Notes on Use, para. 6 (1-1-79) provides, in pertinent part:
"The inclusion in any approved MAI-CR or MACH-CR form of a call for a charge or finding of time or place of any act or offense is not intended to alter general rules relating to these subjects. They may become of `decisive importance' under certain circumstances, such as (a) when evidence of an alibi is introduced, or (b) when an issue of venue arises, or (c) where a statute of limitations may be involved, or (d) where the defendant may have committed several separate offenses against the same victim over a short space of time. See, for example, the forms in Series 20 on Sexual Offenses." (Emphasis added.)
The Series 20 instruction forms in MAI-CR 2d provide not only for the specification of the date on which the offense allegedly occurred, but also, when necessary, the specification of the time of day or night. An obvious example of when such specificity would be necessary would be where there is evidence that an accused raped the same victim twice on the same date in the same county, and the accused is charged in one information with separate counts of rape, one count based on one of the offenses and the other count based on the other offense. If both counts were tried at the same time, it would be essential that each verdict directing instruction identify the alleged incident upon which the jury must decide guilt or innocence. In such a case, assuming both incidents occurred at the same site, the simplest way to differentiate between the two incidents would be to specify, in each verdict directing instruction, the time of the incident that is the subject of that instruction. Obviously, the evidence may not always establish the specific time that a particular incident occurred, therefore the Series 20 forms provide that when it is necessary that the instruction state the time of the alleged offense, the time can be alleged as "between the hours of [times of day or night]."
In the case before us, there was an even more effective way to tailor Instructions 5 and 6 so that each would clearly identify the incident to which it was intended to refer.
Assuming thatas revealed by the prosecuting attorney in the pretrial conferenceCount II was meant to charge defendant with violating § 571.030.1(4), RSMo Cum.Supp.1983, at the residence of Jackie Summers, and Count III was meant to charge defendant with violating the same statute at Pearl's Cafe, the phrase "at the residence of Jackie Summers" could have been inserted in paragraph "FIRST" of Instruction 5 immediately following the date, so that this segment of Instruction 5 would have read "... on or about the 14th day of April, 1984, at the residence of Jackie Summers, in the County of McDonald...", and the phrase "at Pearl's Cafe" could have been similarly inserted in Instruction 6.
A situation comparable to the one in the instant case arose in State v. Woodfin, 559 S.W.2d 273 (Mo.App.1977). There, the accused was charged in Count I with selling marihuana to one Brindell, and in Count II with selling marihuana to one Schneider. The State's evidence showed that the sales occurred on the same date at the same site, one sale immediately following the other. The verdict directing instructions tracked MAI-CR 14.10. Each instruction referred *286 to a specific count, but the instructions were otherwise identical. Neither instruction identified the person to whom the sale was allegedly made. The accused, in his testimony, admitted that two marihuana sales took place, one sale to each purchaser, but the accused stated that the sales were made by another occupant of the automobile in which he was riding. The accused, unlike defendant in the instant case, made no objection to either instruction, nor did he assign error regarding them in his motion for a new trial. On appeal, however, he contended that the instructions constituted plain error. Observing that the accused did not dispute that two offenses had occurred, the opinion concluded it would be unreasonable to speculate that the jury did not know and understand that each instruction referred to one of the two sales established by the evidence. Id. at 276. Finding no manifest injustice resulting from the instructions, the appellate court affirmed the accused's conviction of both counts. The opinion cautioned, however: "[W]hen, as in this case, a person is charged in separate counts with a separate sale of a controlled substance, the better practice would be to modify each instruction to identify the sale referred to other than by reference only to a count of the information." Id. at 276[1].
In the instant case, not only did defendant raise the instructional point during the instructions conference and preserve it at each required stage thereafter, but the failure of Instruction 5 and Instruction 6 to identify the incidents to which they were respectively intended to refer was more egregious than in Woodfin because of defendant's trial strategy.
Defendant did not testify, but defense counsel, through cross-examination of the State's witnesses and the presentation of defense witnesses, sought to discredit the State's evidence and to extenuate defendant's conduct at Jackie Summers' residence and at Pearl's Cafe. Thus, unlike Woodfin, where the identity of the culprit was the only issue, the jury in the instant case had to decide whether defendant's actions during either, or both, of the incidents mentioned in the evidence constituted a violation of § 571.030.1(4), RSMo Cum.Supp. 1983. That being so, we find defendant's second point meritorious, and we hold that the trial court erred in failing to specify, in Instructions 5 and 6, the incident to which each was meant to refer.
In so holding, we have not overlooked the fact that the trial court's instructions included Instruction 10, based on MAI-CR 2d 2.70.[2] Instruction 10, while explaining that defendant was charged with a separate offense in each count submitted to the jury, did nothing to clarify which verdict directing instruction referred to the incident at Jackie Summers' residence and which one referred to the incident at Pearl's Cafe. Instruction 10 did not, therefore, cure the defect complained of by defendant in his second point.
We emphasize that we need not, and do not, express any opinion regarding the correctness of MAI-CR 2d 31.22 [1983 Revision], on which Instructions 5 and 6 were based. Consequently, the cases cited by the State holding that we lack authority to brand an MAI-CR instruction erroneous are inapposite.
The problem in the instant case is not with MAI-CR 2d 31.22 [1983 Revision], but with the fact that defendant was charged with, and tried for, two violations of the same statute occurring on the same date in the same county. In such circumstances, as pointed out in Woodfin, 559 S.W.2d at 276[1], a phrase identifying the alleged incident *287 to which each verdict directing instruction refers should be added in using the proper pattern instruction submitting the charged offense. Such is implicit, if not explicit, in MAI-CR 2d 17.00 Supplemental Notes on Use, para. 6 (1-1-79), quoted earlier.[3]
The unique circumstances of the instant case are analogous to a civil suit for damages for bodily injury where there is evidence that the plaintiff, prior or subsequent to the event upon which the suit is based, sustained bodily injury from other trauma. The pattern instruction on damages, MAI 4.01 [1980 Revision], refers to damages sustained "as a direct result of the occurrence mentioned in the evidence." As explained in Vest v. City National Bank and Trust Co., 470 S.W.2d 518, 520-21 (Mo.1971), the word "occurrence" should be adequate except in cases where there is evidence that two different occurrences produced the injury, with the defendant being responsible for only one. In such cases, counsel for the plaintiff will need to substitute, in the damages instruction, some descriptive term which will properly limit the jury to the occurrence produced by the defendant. See, MAI 4.01 [1980 Revision], Notes on Use (1978 Revision) para. 3, and Russell v. Terminal Railroad Association of St. Louis, 501 S.W.2d 843, 847[2] (Mo. banc 1973).
The same rationale applies here, where two occurrences were mentioned in the evidence and the jury was charged with the duty of deciding defendant's guilt or innocence of violating the same statute as to each occurrence. Each verdict directing instructiona clone of the other except in its reference to a numbered countshould have identified the occurrence to which it pertained, and each such instruction was defective in failing to do so. For the reasons heretofore expressed, such defects, in our opinion, constituted prejudicial error. We must, accordingly, reverse the judgment and remand the cause for a new trial.
Reversal and remand, however, do not render moot defendant's contention that the trial court erred in denying his motion to dismiss the amended information and his motion for a bill of particulars. Consequently, we must address defendant's first point.
Defendant's attack on the amended information is based on State v. Lewis, 642 S.W.2d 627, 630[1] (Mo. banc 1982), which states that the purpose of an information is twofold: to inform the accused of charges against him so that he may prepare an adequate defense, and to preclude retrial on the same charges should a jury acquit him. Defendant insists that the two counts upon which he was tried fulfilled neither of those requirements.
In evaluating that argument, we observe that generally it is permissible and sufficient for an information to charge the offense in the language of the statute alleged to be violated if the statute sets forth all the constituent elements of the offense. State v. Kesterson, 403 S.W.2d 606, 609[1] (Mo.1966). There is an exception if the statute creating the offense uses generic terms in defining the offense and does not individuate the offense with such particularity as to notify the accused of what he is to defend against. Id.
The amended information in the instant case charged defendant with violating § 571.030.1(4), RSMo Cum.Supp.1983, twice on the same day in the same county. Section 571.030 provides, in pertinent part:
"1. A person commits the crime of unlawful use of weapons if he knowingly:
. . . . .
(4) Exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner; or
. . . ."
*288 The above provisions set forth all the constituent elements of the offense with which defendant was charged in Count II and in Count III. Furthermore, the above provisions do not use generic terms in defining the offense. Count II and Count III parrot the statutory language. Thus, under Kesterson, Counts II and III are not vulnerable to attack for insufficiency.
Additionally, Counts II and III faithfully track MACH-CR 31.22 [1983 Revision]. Rule 23.01(b)[4] sets out what an information must contain, and Rule 23.01(e) provides that informations substantially consistent with the forms of informations which have been approved by the Supreme Court of Missouri shall be deemed to comply with the requirements of Rule 23.01(b). State v. McMikle, 673 S.W.2d 791, 796 (Mo. App.1984).
Here, if defendant, on April 14, 1984, had violated § 571.030.1(4), RSMo Cum.Supp. 1983, only once, and if he had been charged with violating said section only once, Count II (or Count III for that matter) would have, under the authorities cited above, unquestionably been adequate to charge such a violation, to inform defendant of the accusation sufficiently to enable him to prepare a defense, and to preclude retrial on the same charge should he be acquitted.
It was the fact that the State's evidence showed that defendant violated § 571.030.1(4) twice on the same date in the same county, coupled with the fact that the State charged defendant with both violations, that created uncertainty about which count referred to which episode. Count II and Count III each adequately charged defendant with violating § 571.030.1(4), but neither defendant nor anyone else could determine, from the wording of the counts, which count referred to which incident.
In these unique circumstances, the amended information, in our opinion, was not subject to dismissal for insufficiency. Instead, by the expedient of a bill of particulars the uncertainty complained of by defendant could have been easily remedied, and the record could have been adequately clarified to answer any possible "double jeopardy" issue in the future. State v. Trimble, 654 S.W.2d 245, 259[27] (Mo.App. 1983).
True, Rule 23.04 provides that a motion for a bill of particulars should be made no later than ten days after arraignment, and the motion here was not filed until the morning of trial. The trial court, however, is authorized by Rule 23.04 to permit the filing of such a motion more than ten days after arraignment, and, in the circumstances of this case, the trial court should have granted that portion of defendant's motion for a bill of particulars wherein it was requested that the prosecuting attorney specify the site at which the conduct alleged in Count II occurred and the site at which the conduct alleged in Count III occurred.
Accordingly, we hold that on remand the trial court shall direct the prosecuting attorney to promptly file a bill of particulars specifying that the offense charged in Count II occurred at the residence of Jackie Summers, and that the offense charged in Count III occurred at Pearl's Cafe. Inasmuch as defendant has now been through a preliminary hearing, a trial, and an appeal, we see no need for the bill of particulars to include any of the other information requested by defendant.
Defendant's final assignment of error is based on an incident that occurred during the prosecuting attorney's cross-examination of defense witness Gene Bunch. The prosecutor asked: "And also you're involved in a civil lawsuit, is that correct, in regards to an arson of a house or a fire of a house?"
Defense counsel objected, then, at sidebar, moved for a mistrial. Before the motion received a ruling, defense counsel stated he would stipulate that he represented Bunch "on several civil matters."[5] Thereafter, *289 in the presence of the jury, the prosecuting attorney established through Bunch's testimony that defense counsel had represented Bunch on "two or three" occasions in the past, and that defense counsel was presently representing Bunch "in a civil matter." Bunch also revealed that he had testified as to property values in "numerous civil lawsuits" at the request of defense counsel, and that he had received compensation therefor. No further question was asked by the prosecuting attorney regarding arson.
Defendant contends that the trial court erred in failing to grant a mistrial. Defendant asserts that a party is prohibited from attacking credibility by showing arrest, investigation, criminal charge or specific acts of misconduct not resulting in conviction, unless such are used to show a witness' bias or interest in the lawsuit. Defendant's statement of the law is correct in part, but incorrect in part. Subject to an exception not pertinent here, credibility of a witness may not be attacked through a showing of arrest, investigation or criminal charge which does not result in conviction. State v. Easley, 662 S.W.2d 248, 250[3] (Mo. banc 1983). A witness may, however, be asked whether he has committed a crime, or whether he has admitted committing a crime. State v. Foster, 349 S.W.2d 922, 924-25[6-8] (Mo.1961); Neal v. State, 669 S.W.2d 254, 262[11] (Mo.App.1984). Such inquiry is permissible even though the witness has not been convicted of the crime. State v. Meek, 584 S.W.2d 168, 170[5] (Mo.App.1979); Neal, 669 S.W.2d at 262[11]. Under § 491.050, RSMo Cum. Supp.1983, any prior criminal convictions may be proved to affect a witness' credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect a witness' credibility in a criminal case. Such proof may be either by the record or by the witness' own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by the witness' answer.
The flaw in the prosecuting attorney's question to Bunch was that it did not inquire whether Bunch had been convicted of arson, whether he had committed arson, whether he had admitted committing arson, whether he had entered a plea of guilty to arson, whether he had entered a plea of nolo contendere to arson, or whether he had been found guilty of arson.
We are mindful, of course, that bias of a witness toward one party is an appropriate area for cross-examination, State v. Edwards, 637 S.W.2d 27, 29[4-6] (Mo.1982), but we fail to see how Bunch's "involvement" in a civil suit regarding "arson" of a house, absent any other details,[6] would demonstrate bias in favor of defendant or against the State in the instant case.
Accordingly, we hold that the prosecuting attorney's question was improper. Whether, however, it was so prejudicial as to require the drastic remedy of a mistrial is an issue we do not reach, having already determined that, because of instructional error, the judgment cannot be upheld.
The judgment is reversed and the cause is remanded for a new trial.
PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.
NOTES
[1] The cause was tried in Newton County on a change of venue.
[2] Instruction 10 stated:

"The defendant is charged with a separate offense in each Count submitted to you. Each offense and the evidence and the law applicable to it should be considered separately. Any evidence which was or has been limited to one of the offenses charged or one purpose should not be considered by you as to another offense charged or for any other purpose.
You may find the defendant guilty or not guilty on any or all of the Counts submitted against him.
You should render a separate verdict as to each Count submitted against the defendant."
[3] Directions similar to MAI-CR 2d 17.00 Supplemental Notes on Use, para. 6 (1-1-79) appear in MACH-CR 1.00 Supplemental Notes on Use, para. 6 (1-1-79), dealing with preparation of indictments and informations.
[4] Rule references are to Missouri Rules of Criminal Procedure (15th ed. 1984).
[5] The attorney representing defendant on this appeal is not the attorney who represented defendant at trial.
[6] At the hearing on defendant's motion for a new trial, the prosecuting attorney established that defense counsel was representing Bunch in a civil action in which Bunch was seeking recovery from an insurance company for fire loss to a house, and in which the insurance company, in its answer, had averred that it was not liable because the loss originated by an act, design or procurement on the part of Bunch. The State argues, in its brief, that the prosecuting attorney was attempting, at trial, to show that Bunch was biased toward defendant because of Bunch's relationship with defense counsel. The prosecuting attorney's question at trial regarding the "arson," however, made no reference to Bunch's representation by defense counsel in the insurance litigation. We therefore fail to see how the prosecuting attorney's question fit the theory now advanced by the State.