**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Quantrell CODY, Defendant–Appellant.**

**Quantrell CODY, Plaintiff–Appellant,**

v.

**STATE of Missouri,
Defendant–Respondent.**

**Nos. 54867, 57560.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 27, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 3, 1991.

Application to Transfer Denied
Feb. 7, 1991.

William J. Swift, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

A jury convicted defendant, Quantrell Cody, of two counts of rape, two counts of sodomy and one count of first degree robbery. All counts arose out of a single continuous incident. Defendant was sentenced, as a prior and persistent offender and prior sexual offender, to 30 years on each of the rape and sodomy charges, to be served consecutively, and to 30 years on the robbery charge to be served concur-

rently with the other sentences. Defendant filed a Rule 29.15 motion which was denied. 800 S.W.2d 750 (Mo.App.1990) Defendant appeals his sentences and the denial of his Rule 29.15 motion. We affirm.

Defendant does not question the sufficiency of the evidence. One morning about 12:30 a.m., while walking near her home looking for her sister, the victim was approached by defendant. She had never met defendant before. She asked him if he knew her sister's boyfriend, Jason. Defendant said he did, and proceeded to lead the victim to where he said her sister and Jason could be found. As the two approached a vacant house, defendant drew a knife and held it to the victim's throat. He forced her upstairs in the vacant house and demanded money from her. Defendant then sodomized the victim in the kitchen near a table. He took her into the "second room from the kitchen" and raped her. A short time later in this room, he sodomized her again. He then took her to the "first room from the kitchen", "the middle room", and again raped her, this time "on the mattress". He then took her purse, which contained $180. Defendant left. The victim ran back to her home and called the police. Subsequently, defendant was arrested.

At trial, defendant called four witnesses: two who testified they had seen defendant and the victim together the evening before the crimes occurred, and two who testified they had met the victim with defendant on two occasions before the crimes occurred. Defendant did not testify.

In the indictment and the subsequent substitute information charging defendant, the rape counts, Counts I and II, were identically worded. The sodomy counts, Counts III and IV, were also identically worded. (See Appendix I) The language of these counts, thus, does not make it clear which count of rape refers to which of the two described acts of rape, nor which count of sodomy refers to which of the two described acts of sodomy.

The verdict directing instruction on each count suffers from the same defect. Instruction No. 6, a rape instruction, refers to Count I. Instruction No. 8, the other rape instruction, is identical, except that it refers to Count II. (See Appendix II) Instruction No. 10, a sodomy instruction, refers to Count III. Instruction No. 12, the other sodomy instruction, is identical, except that it refers to Count IV.

Defendant contends the specific conduct referred to in each of these instructions could have been identified by including in each a descriptive reference to the room in which the corresponding conduct occurred. Failure to do so, defendant contends, prejudiced him because the jury was unable to determine what evidence was proper to consider in deciding guilt as to each individual count of rape and sodomy. We find no prejudice.

Note on Use 2 to MAI–CR 3d 320.02.1B, forcible rape, requires the instruction to include the time of day or night the incident occurred "where the defendant has been charged with more than one rape of the same victim on the same day. If it is impossible to fix the occasion of the offense by time or date, the instruction should be modified to identify the occurrence by some other reference". Note on Use 2 to MAI–CR 3d 320.08.1, forcible sodomy, makes the same identification requirement.

■ If each of the crimes charged here occurred, they occurred in sequence and in separately identifiable places. Thus, arguably the failure in the instructions "to identify [each] occurrence by some ... reference" was error. Notes on Use, *supra.* This error, however, would not be prejudicial.

Along with the verdict directing instructions, the jury was instructed

The defendant is charged with a separate offense in each of the ... counts submitted to you. Each count must be considered separately. You should return a separate verdict for each count and you can return only one verdict on each count.

We must presume the jurors followed this instruction. *See, e.g. State v. Hunter,* 586 S.W.2d 345, 348 (Mo.1979). This pre-

sumption compels the conclusion that the jurors knew they must consider each of the four counts, and the respective charges, separately. The necessary proof of each charge came from one source, the testimony of the victim. Defendant's defense was that the victim lied. Through his witnesses, he attempted to show he and the victim knew one another, and, by inference, he argued the victim fabricated her testimony out of anger. Thus, the basic issue to be resolved by the jury was the credibility of the victim.

The victim's testimony was direct and straight forward. She did not single out nor give special treatment to any particular act. From our reading of the record, the jury had to believe either all the acts occurred, or none of them. And, if the victim were believed, no rational trier of fact could have a reasonable doubt as to whether each crime was committed. The jury must have believed the victim, followed the instruction to consider each count separately and found the defendant guilty of each count.

Admittedly, as defendant notes, the verdict directing instructions were not differentiated, and, therefore, the jurors were not instructed as to what part of the victim's testimony they should use to determine each crime. We find no prejudice could be worked by this failure, however.

Each of the crimes was proved beyond a reasonable doubt. Thus, as far as the two rapes are concerned, the most probable worst case scenario for defendant would be that some or all of the jurors would use evidence of the first rape in the kitchen to find the defendant guilty of the second rape "on the mattress", in "the first room" away from the kitchen, or vice versa. But, this result, the finding of guilt on each count of rape, would be no different than the result which would be reached by these jurors if they were not confused about the proper relation of the evidence to each count. Defendant, thus, could not have been prejudiced on the rape counts. The same reasoning applies to the sodomy counts.

Defendant relies on *State v. Mitchell,* 704 S.W.2d 280 (Mo.App.1986). This reliance is misplaced.

In *Mitchell,* the defendant was charged with two counts of exhibiting a lethal weapon in an angry or threatening manner. The two alleged acts occurred on the same day but at widely different places and under different circumstances. The verdict directing instructions on the two counts, however, were identical and made no attempt to differentiate between the two counts. Our colleagues in the Southern District determined prejudice resulted from the impossibility of determining which count referred to which incident. *Id.* at 286.

*Mitchell,* however, is distinguishable from the present case, if it need be distinguished. In *Mitchell,* the defendant's acts allegedly occurred at widely different locations and under different circumstances. Through cross-examination of the State's witnesses and the testimony of his own witnesses, the defendant "sought to discredit the State's evidence and to extenuate defendant's conduct" at the two different locations. *Id.* at 286.

In the present case, each of the two distinct acts of rape and two distinct acts of sodomy occurred over a short period of time, in the same location and under almost identical circumstances. Defendant's defense did not depend upon surrounding facts and circumstances which differed greatly from count to count; rather, the only real issue for the jury regarding the separate counts was the credibility of the victim's testimony.

The present case is akin to *State v. Woodfin,* 559 S.W.2d 273 (Mo.App.1977), in which this Court held that the submission of two counts of sale of marijuana under identical verdict directing instructions was not prejudicial. In *Woodfin,* a defendant was charged with selling marijuana from inside a car to two pedestrians within the space of a few minutes. Defendant's only defense was mistaken identity; the other details of the incidents were not in issue and, thus, no prejudice resulted from the error. *Id.* at 276.

The facts which led to a determination of prejudice in *Mitchell* do not exist in the present case. If any prejudice resulted from the possible instructional error here, it could only result from the jury ignoring the proper instruction that it must consider each count separately, it "should return a separate verdict for each count", and it "can return only one verdict for each count". We must presume, however, that the jury followed this instruction rather than ignoring it. *State v. Hunter, supra* at 348.

Defendant next contends the prosecutor improperly implied defense counsel or her investigator "suborned perjury and fabricated [defendant's] defense". During her closing argument, defense counsel argued by inference that she knew certain facts about the victim, such as the victim's nickname, the name of the father of the victim's children and the name of the victim's brother. Then, counsel argued:

How do you think we know that? Because Quantrell Cody knows [the victim], he knows her. She's lying about this and anybody who would lie about something like that can't be believed as to anything, nothing. It's ridiculous.

Responding in his rebuttal argument, the prosecutor said

How does [defense counsel] know [the victim's nickname] is Pumpkin? I have an investigator, she has an investigator. They make telephone calls and try to find witnesses. They go out and talk to people on the street. And, how many brothers and sisters does Pumpkin have, does [the victim] have? You know talk to anybody on the street:

Do you know [the victim]. Yeah, I know her. What's her nickname? Pumpkin.

Defense counsel objected on the grounds the argument implied she or her investigator fabricated the defense. The court denied the objection.

On appeal, as at trial, defendant contends the prosecutor implied defense counsel concocted the fact the victim was well known to defendant and, thereby, implied defense counsel "suborned perjury and fabricated [defendant's] defense", to defendant's prejudice. Moreover, defendant contends, the prosecutor compounded this prejudice by continuing his argument:

Who's being honest with you here, and who's been dishonest with you here, and who has a reason to be dishonest? The victim has a reason to accuse a boyfriend, a boyfriend who's taking her place [sic] and everything, a rape, rape, sodomy and sodomy, Class A and B felonies. I mean, they don't get any higher. This isn't just an assault, he assaulted me, I want to put him in the workhouse. This is "A" and "B" felonies. She's just saying that because they're boyfriend and girlfriend? She's just saying it?

■ The trial court has discretion in controlling closing argument, and we will reverse the trial court's exercise of that control only for an abuse of discretion. *See, e.g. State v. McDonald*, 661 S.W.2d 497, 506 (Mo.1983), *cert. denied* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The court did not abuse its discretion here.

To understand the prosecutor's challenged response to defense counsel's argument, the argument must be placed in proper context. Prior to making that part of her closing argument quoted above, defense counsel raised the issue of her knowledge of the victim's nickname and people who knew the victim in the form of a rhetorical question. Thus, she argued:

"I submit to you that [the victim] is lying and she knows that she is lying about not knowing Quantrell Cody because how else would I know about Mrs. Geneville Lowery [the victim's mother] and Jeanette Jefferson [allegedly a friend of both the victim and defendant] and Dwight Williams, her brother Champ, his nickname Champ? How would we know that she's Pumpkin? People call her Pumpkin. Isn't that silly."

■ As can be seen, defense counsel made her argument by using the simple rhetorical device of asking a question which she believed could be answered by only one compelling inference: Q: How did I know the facts about the victim? A: Defendant and the victim knew one another, and he told me this information.

On rebuttal, the prosecutor addressed the question raised by defense counsel with his own inferred answer: If defense counsel did have this information, she could have obtained that information from her investigator and not from defendant. To us, this is proper rebuttal.

As far as the prosecutor's reference to honesty, we do not read that as an attempt to impugn the integrity of defense counsel. Defendant's defense was that the victim and he knew one another and, because she was angry with him, she lied about his sexual assaults against her. The defendant, thus, put the victim's honesty in issue. In response, the prosecutor, in like manner, put the honesty of the defense witnesses in issue. In short, the prosecutor's arguments were proper rebuttal to defense counsel's arguments.

Defendant also contends the trial court erred in failing to suppress statements he made to the police at the time of his arrest. Defendant contends his statements were made in response to a custodial interrogation without a warning of his Miranda rights.

■ Defendant's pre-trial motion to suppress these statements was heard and denied. Defendant failed to object to the introduction of the statements at trial and, therefore, failed to preserve this issue for review. We review, however, for plain error under Rule 30.20. We find neither plain error nor error.

Some additional facts must be related to dispose of this issue. About 1:15 or 1:30 a.m. on the morning of the incident in question, a Mr. James Mitchell was driving near the location of the incident and saw defendant pull his car to the side of the street. Defendant waved Mr. Mitchell to stop, and, when he did, defendant offered him $20.00 for a ride to East St. Louis. Mr. Mitchell saw a woman's purse on the front seat of defendant's car and the contents of the purse appeared to have been strewn throughout the car. Mr. Mitchell left this scene, drove to a police station to report this incident and subsequently led the police to defendant's car.

Four officers arrived at defendant's car about the same time. One asked defendant what he was doing there; defendant replied he was just driving around. Another officer noticed the purse on the front seat and asked defendant to whom the purse belonged. Defendant replied the purse belonged to his sister, Jeanette, which is the victim's first name. However, when asked, defendant could not tell the police his "sister's" last name. The officers then received a radio description of the suspect sought for the rapes. The description matched defendant.

The police formally arrested defendant and took him to the scene of the rapes a few blocks away, where the victim identified defendant as the man who raped and sodomized her. The police seized the purse, a knife, and $165 in cash. These items, including the knife, all belonged to the victim.

We find these statements were not made under custodial interrogation. Custodial interrogation does not begin until the police have both reasonable grounds to believe that a crime has been committed and that the defendant has committed it. *State v. Deloch*, 628 S.W.2d 954, 956 (Mo.App.1982). Thus, at the time of the interrogation, the investigation must have focused directly on the defendant. *State v. Bradley*, 670 S.W.2d 123, 126 (Mo.App.1984). Investigatory questioning, for the purpose of determining whether anyone is entitled to *Miranda* warnings, does not constitute custodial interrogation. *State v. Sanad*, 769 S.W.2d 436, 439 (Mo.App.1989).

Until defendant was unable to tell officers his "sister" Jeanette's last name, the officers could have no more than a suspicion a crime had occurred. Mr. Mitchell had informed them only that there was a man driving around alone with a woman's purse in his car. That knowledge does not by itself provide reasonable grounds to believe a crime has been committed. There is nothing necessarily criminal about possessing a purse. Moreover, there is no evidence to show the police had any reason to consider defendant a suspect in the rapes or sodomies before questioning him about

the purse. Because the officers had no reasonable grounds to suspect defendant was connected with any crime they knew had been committed, they had no probable cause to arrest defendant and no reason to make defendant the focus of their investigation. Their interrogation prior to the formal arrest, therefore, did not constitute a custodial interrogation. *State v. Deloch* and *State v. Bradley, supra.*

### Rule 29.15 Motion

■ Defendant filed a verified *pro se* motion under Rule 29.15 and, subsequently, his appointed counsel filed an unverified amended motion. Verification of the amended motion, as well as the original motion, is a jurisdictional prerequisite for consideration of the issues raised in the motion. *State v. Oxford*, 791 S.W.2d 396, 401 (Mo. banc 1990). Therefore, we address only those issues raised in defendant's verified *pro se* motion and raised again on appeal.

On appeal, defendant argues the motion court did not address all of the issues raised in his *pro se* motion. It is true that in its Findings of Fact and Conclusions of Law, the motion court expressly addressed only those issues raised in defendant's unverified amended motion. A review of these Findings and Conclusions, however, is more than adequate to provide a meaningful review of the four issues raised in defendant's *pro se* motion. *See, McDonald v. State*, 758 S.W.2d 101, 104 (Mo.App. 1988).

Three of the issues raised by defendant in his *pro se* motion were also raised, directly or indirectly, in his amended motion. We address these issues first.

■ In his *pro se* motion, defendant contended his trial counsel was ineffective because she would not allow him to testify at trial. The motion court, in its order, stated that trial counsel's testimony and defendant's testimony "differ in several respects" and that it "can find nothing in [defendant's] testimony that is supportive of his truth and veracity". We defer to the trial court's determination of credibility.

*See, e.g., Walster v. State* 438 S.W.2d 1, 3 (Mo.1969).

Trial counsel testified that defendant chose not to testify after she informed him his prior convictions would be admitted into evidence if he did testify. Thus, the credited testimony shows that defendant made a sensible choice not to testify, which was based upon a rational prediction made by an effective counsel.

■ Next, in his *pro se* motion, defendant contended his trial counsel failed to call as a witness a Jeanette Jefferson. In his amended motion, defendant added the names of a Michael Holmes, a "Gino", and a "Sylvia", who, he contended, also should have been called as witnesses. According to defendant, in his testimony on the motion, all these witnesses would have corroborated the testimony of the four defense witnesses who were called at trial and testified that the victim and defendant knew one another. Defendant also testified that Michael Holmes and "Gino" witnessed an altercation between the victim and defendant in which defendant took the victim's purse.

As noted, the motion court discredited defendant's testimony. Moreover, the court found that trial counsel had been given "little or no information on Gino and Sylvia" and that trial counsel was unable to find Michael Holmes, despite significant efforts. Furthermore, none of these uncalled witnesses appeared at the motion hearing to testify as defendant claimed they would.

The motion court was not bound to accept defendant's testimony as true, even if uncontroverted, *Floyd v. State*, 518 S.W.2d 700, 703 (Mo.App.1975), nor was it bound to accept defendant's speculations about the testimony of these alleged witnesses who failed to appear at the motion hearing. *See, e.g., Hogshooter v. State*, 681 S.W.2d 20, 21–22 (Mo.App.1984).

■ Also, in both his *pro se* motion and his amended motion, defendant contended his trial counsel should have called his mother, Barbara Huff, as a witness. In his *pro se* motion, defendant contended his mother would have testified the victim told

her, "in the presence of a third party", that defendant had not raped her and that she was simply angry with him for "running off with her purse".

At the hearing on the motion, trial counsel was called by the state, out of turn, prior to defendant calling his mother as a witness. When trial counsel was asked whether she had talked to defendant's mother, she said:

I don't have any independent recollection of—I know I've talked to [her] several times. The investigation on this case centered around any people who ... were able to testify that the defendant and the victim had had some type of dating relationship in the past, and anyone whose name was mentioned to me by [defendant] or any member of his family who could give testimony in that regard was investigated and I think three or four witnesses were called.

When defendant's mother was subsequently called as a witness, she testified she had a "three-way" phone conversation with a Jeanette Jefferson and the victim. According to her testimony, Jeanette Jefferson called the victim, and the mother conversed with the two of them on "a three-way line". She said, however, she did not "really know the victim in this case". But, the mother testified, the person on the phone said: "she was kind of mad" at defendant because "he took her money" but "he did not rape her". The motion court found that defendant's mother "engaged in a three way telephone conversation" and she "believe[d] the victim was one of the parties [who] stated that defendant didn't rape her".

On this record, we do not find trial counsel to be ineffective for failing to call defendant's mother as a witness. Even crediting the mother's testimony would not help defendant carry his burden. To establish ineffective assistance of counsel based upon trial counsel's failure to call a witness, defendant must show, among other things, that the witness' testimony would

have provided a viable defense. *See, e.g., Hogshooter v. State, supra* at 21–22. Defendant's mother testified that she did not know the victim and that she did not phone the victim, but that the other party to the "three-way" phone conversation, Jeanette Jefferson, made that phone call. Thus, defendant's mother was relying on Jeanette Jefferson to identify the third person to the conversation as the victim. Without the mother's personal knowledge of the identity of the person on the phone, the statement of this unknown party would not be admissible to impeach the victim. *See* McCormick, *On Evidence*, § 226 (3d ed. 1984).[1]

■ Finally, in his *pro se* motion, defendant contended trial counsel admitted in her closing argument that he went into the building where this incident allegedly occurred and, thus, in effect, placed him at the scene with no reason to do so. This, defendant contended, prejudiced his defense.

This issue was not addressed by the parties at the hearing on the motion and was not addressed by the motion court in its order. We find no need, however, to remand the motion for a hearing on this issue.

At the stage of her closing argument in question, defense counsel was attacking the victim's testimony that the incident took place and that it took place in a building. To do so, defense counsel chose the tactic of demonstrating there was no physical evidence to show the victim was sexually assaulted in the building. There were, however, photographs in evidence of the interior of the building showing plaster strewn over the floors of the rooms in question. To discredit the victim, defense counsel used this photographic evidence.

First, she reminded the jury the victim said that defendant

made her go in that building, walk up the stairs, walk through all those rooms, had

1. Also, victim's statement would not be admissible as a declaration against interest for this reason and for the reason the victim was

present in the courtroom. *See State v. Dayringer,* 755 S.W.2d 698, 702 (Mo.App.1988).

sex in the building, did all those things to her.

"That's not what happened", she continued. It could not have happened, she implied.

Look at these pictures. And, [defendant] went in the building. You can see some evidence of plaster on his shoes and on his pants.

But, where's the evidence that [the victim] ever went in the building? If she's in the building, getting raped and pushed around, walking from room to room, don't you think there would be some plaster in her hair, plaster on her clothes, plaster on her skin?

On hindsight, defense counsel herself might not choose to use this tactic as one of the several tactics she used to attack the victim's credibility. But, even on hindsight the tactic is neither unconvincing nor irrational. It has a plausible ring.

Defendant's right to effective assistance of counsel "is not the right to acquittal". *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). We temper our scrutiny of his counsel's performance with deference to counsel's judgment. *Id.* at 858. There are sound policy reasons behind the presumption of counsel's competence:

it is all too tempting for a defendant to second-guess counsel's assistance after conviction ... and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude a particular act or omission of counsel was unreasonable.

*Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984).

We must "eliminate the distorting effect of hindsight ... to evaluate the conduct from counsel's perspective". *Id. See McDonald v. State*, 758 S.W.2d at 106. So viewed, counsel's performance here was not ineffective.

SMITH, J., concurs.

GRIMM, J., concurs in result only.

## APPENDIX I

### Count I

The Grand Jurors of the City of St. Louis, State of Missouri, charge that the defendant, in violation of Section 566.030, RSMo, committed the class B felony of forcible rape, punishable under Section 558.011.1(2), RSMo, in that on the 2nd day of April, 1987, in the City of St. Louis, State of Missouri, the defendant had sexual intercourse with [the victim], to whom defendant was not married, without the consent of [the victim] by the use of forcible compulsion.

### Count III

The Grand Jurors of the City of St. Louis, State of Missouri, charge that the defendant, in violation of Section 566.060, RSMo, committed the class B felony of sodomy, punishable under Section 558.011.1(2), RSMo, in that on the 2nd day of April, 1987, in the City of St. Louis, State of Missouri, the defendant had deviate sexual intercourse with [the victim], to whom defendant was not married, without the consent of [the victim] by the use of forcible compulsion.

## APPENDIX II

### Instruction 6

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 2, 1987, in the City of St. Louis, State of Missouri, the defendant had sexual intercourse with [the victim], and

Second, that defendant did so without the consent of [the victim] by the use of forcible compulsion, and

Third, that defendant was not then married to [the victim], and

Fourth, that defendant knew that sexual intercourse was being accomplished without the consent of [the victim] by forcible compulsion,

then you will find the defendant guilty under Count I of forcible rape.

However, unless you find and believe from the evidence beyond a reasonable

doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Consent or lack of consent may be expressed or implied. Assent does not constitute consent if it is induced by force or duress. "Forcible compulsion" means physical force that over comes reasonable resistance or a threat, express or implied, that places a person in reasonable fear of death or serious physical injury or kidnapping.

If you do find the defendant guilty under Count I of forcible rape, you will return a verdict finding him guilty of forcible rape.

### Instruction 10

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 2, 1987, in the City of St. Louis, State of Missouri, the defendant put his penis in [the victim's] mouth, and

Second, that defendant did so without the consent of [the victim] by the use of forcible compulsion, and

Third, that defendant was not then married to [the victim], then you will find the defendant guilty under Count III of forcible sodomy.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Consent or lack of consent may be expressed or implied. Assent does not constitute consent if it is induced by force or duress. "Forcible compulsion" means physical force that over comes reasonable resistance or a threat, express or implied, that places a person in reasonable fear of death or serious physical injury or kidnapping.

If you find the defendant guilty under Count III of forcible sodomy, you will re-turn a verdict finding him guilty of forcible sodomy.