**STATE of Missouri, Appellant,**

v.

**Raymond LANEAR, Respondent.**

**No. WD 43168.**

Missouri Court of Appeals,
Western District.

March 19, 1991.

court dismissing the charge.

Albert A. Riederer, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for appellant.

William T. Bernard, Kansas City, for respondent.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

PER CURIAM:

The State filed this interlocutory appeal pursuant to § 547.200.1(2), RSMo 1986,[1] to review the action of the trial court in grant-

---

1. All section references are to the Revised Statutes of Missouri 1986, unless otherwise indicated.

ing defendant Raymond Lanear's motion to suppress evidence. Defendant was charged with possession of cocaine, a controlled substance, in violation of § 195.020. Defendant's motion sought to suppress evidence of cocaine found on defendant's person during a search conducted at the police station.

■ Review here is to determine if the evidence supports the trial court's order of suppression. *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). The correctness of the trial court's decision is measured by whether the evidence is sufficient to sustain the findings. *State v. Cross*, 757 S.W.2d 613, 614 (Mo. App.1988); *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). The weight of the evidence and the credibility of witnesses are questions for the trial court's resolution. *State v. Trimble*, 654 S.W.2d 245, 254 (Mo.App.1983); *State v. Boggs*, 634 S.W.2d 447, 453 (Mo. banc 1982).

At the hearing on the motion to suppress, the State presented Police Officer Mark Johnson as its sole witness. Defendant did not offer any evidence and Officer Johnson's testimony was the only evidence offered. It revealed the following.

At approximately 5 p.m. on April 12, 1989, Officer Johnson was patrolling in the area of Armour Boulevard and Tracy in Kansas City, Missouri. Officer Johnson testified that the police had been having a large problem with drug sales in the area. Proceeding east on Armour from Forest towards Tracy, he saw a brown Buick automobile parked along the west curb, just south of the intersection. At this point, Tracy is a one-way street that runs north.

Officer Johnson testified that what drew his attention to the car was that it was parked more than 12 inches from the curb with three black males inside and several more black males leaning into the car on the driver's side. As Officer Johnson's patrol car got closer to the car and was about 25 yards away, the men that had been leaning into the car took off running in various directions. The three men inside the car appeared nervous and the two in the front seat "went down in a leaning forward type motion, as if they were hiding something or going to get something." Officer Johnson, believing a drug deal was in progress, or that the occupants might have been hiding guns or drugs, pulled head to head with the car, got out of his patrol car, and drew his service revolver, pointing it at the three subjects. He stated that he drew his service revolver because of the possibility of violence and the connection of drugs and guns, and his desire not to be shot. He stated that at the time he was about 20 feet away from the individuals in the car.

Officer Johnson ordered them to put their hands up above the dash where he could see them. Initially all three occupants brought their hands up. Officer Johnson then called on his portable walkie talkie for back-up. During the time he called for back-up the individual in the front passenger seat dropped his right hand down below the dash. Officer Johnson yelled at him to bring his hand back up. Before the back-up arrived approximately one minute later, the individual in the front passenger seat dropped his hand down two or three more times.

When the back-up car arrived, Officer Johnson ordered the three men to exit the car. He then conducted a limited search of the car and immediately discovered a loaded .357 caliber revolver under the passenger side of the front seat. Officer Johnson testified that the seat was a bench seat. Officer Johnson then searched the entire interior of the car. He questioned the three occupants about who owned the gun and none of them said he knew anything about it. Unable to determine whose weapon it was, Officer Johnson then placed all three men under arrest for carrying a concealed weapon.

Officer Johnson asked the three men their names. The driver was identified as the defendant, Raymond Lanear. The front passenger, who initially lied about his name, was later identified as Norman Jones. The passenger in the back seat was identified as Marcellius Clayton. In addi-

tion to being placed under arrest for carrying a concealed weapon, Norman Jones was arrested on warrants.

While Norman Jones was being booked in he discovered that he was being arrested on warrants and for carrying a concealed weapon, but his companions, the defendant and Marcellius Clayton, were only being arrested on the weapon charge. Norman Jones asked Officer Johnson, "How come the other guys aren't getting arrested for any more?" Jones then told Officer Johnson that the defendant had placed an amount of crack in his underwear while in the patrol wagon while being driven downtown. Officer Johnson searched defendant at the police station and discovered the cocaine in his underwear. Defendant was subsequently charged with possession of a controlled substance.

Defendant argues that the police did not have the reasonable suspicion required to make an investigatory stop of the vehicle. Because of this, defendant argues, the subsequent search of the vehicle was illegal, thereby tainting the gun found during the search of the car as well as the cocaine found on defendant's person during the search at the police station. Defendant also argues that even if the police did have reasonable suspicion that illegal drug activity was occurring, and the subsequent search of the vehicle was therefore legal, the police did not have probable cause to arrest defendant for possession of a concealed weapon. The argument continues that the arrest on the weapon charge was a pretext to enable the police to search defendant for drugs. This, defendant concludes, invalidates the arrest and mandates suppression of the cocaine, which defendant argues is tainted by the allegedly illegal arrest.

## I.

The first issue to resolve is whether Officer Johnson had any legal justification to stop the vehicle. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court first recognized the right of police officers to make an investigatory stop. The Court held in *Terry* that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," even if the officer lacks probable cause. *Id.* at 30, 88 S.Ct. at 1884. To justify the particular intrusion, however, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), the Court held that police may order persons out of an automobile during a stop for a traffic violation and may frisk the occupants for weapons if there is a reasonable belief that they are armed and dangerous. Then, in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the *Terry* principle was extended to the search of the interior of the vehicle "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* at 1049, 103 S.Ct. at 3481.

The Fourth Amendment requires "some minimal level of objective justification" for making the stop. *I.N.S. v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984). The reasonable suspicion which is needed to justify a *Terry* stop need not rise to the level of probable cause to arrest. It is not necessary that the articulable facts and rational inferences on which the officer acts exclude every possible interpretation other than criminal activity. The standard is whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate. *State v. Lasley*, 583 S.W.2d 511, 518 (Mo. banc 1979) (citing *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1879–80). In judging on-the-street encounters, it

is proper "to take into account a police officer's trained instinctive judgment operating on a multitude of small gestures and actions impossible to reconstruct." *Sibron v. New York*, 392 U.S. 40, 78, 88 S.Ct. 1889, 1910, 20 L.Ed.2d 917 (1968) (Harlan, J., concurring).

■ Defendant concedes that if Officer Johnson had reasonable suspicion to believe illegal drug activity was occurring within or around the vehicle, a *Terry* stop for investigative purposes would be justified. Reasonable suspicion is determined from the "totality of the circumstances— the whole picture." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *see also United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). The totality of the circumstances known to Officer Johnson were as follows. Three men were in the car with the engine running. Several men were leaning into the open windows on the driver's side of the car. The men leaning into the car took off running in various directions when they saw the patrol car approaching. The men in the car appeared nervous and the two men in the front seat made furtive movements which led the officer to believe that they were hiding something or going down to get something. The officer testified that he had in the past made drug arrests on that corner. The totality of the circumstances known to Officer Johnson met the requisite level of reasonable suspicion under *Terry* and entitled him to detain defendant until he had satisfied his suspicions. Officer Johnson was aware of specific articulable facts that, together with rational inferences drawn therefrom, led him to suspect that criminal activity was afoot. Officer Johnson was of the opinion that defendant or one of his companions had possibly placed a weapon under the seat and had reason to be concerned for his safety. The stop was justified under the principles articulated in *Terry*.

## II.

The next issue is whether Officer Johnson had probable cause to arrest defendant on the charge of carrying a concealed weapon. Defendant argues that even if Officer Johnson had reasonable suspicion that illegal drug activity was occurring, and the subsequent search of the vehicle was therefore legal, Officer Johnson did not have probable cause to arrest defendant for carrying a concealed weapon. Defendant argues that the suspect in the front passenger seat, Norman Jones, was in control of the weapon and therefore the police did not have probable cause to place defendant under arrest on the concealed weapon charge.

■ Probable cause to arrest without a warrant simply means a knowledge of facts and circumstances sufficient for a prudent person to believe a suspect is committing or has committed an offense. *State v. Fain*, 679 S.W.2d 419, 423 (Mo. App.1984); *State v. Heitman*, 589 S.W.2d 249, 253 (Mo. banc 1979), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980). Its existence must be determined by practical considerations of everyday life on which reasonable persons act, and not on the hindsight of legal technicians. *Fain*, 679 S.W.2d at 423; *State v. Salkil*, 649 S.W.2d 509, 514 (Mo.App.1983), *cert. denied*, 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983). The facts and circumstances known to Officer Johnson were sufficient for a prudent person to believe defendant had concealed the weapon.

Although no evidence was admitted as to whether defendant was the owner of the car, he was in the driver's seat and the engine was running at the time of the stop. Defendant appeared nervous and made furtive movements when he saw the patrol car approaching; he "went down in a leaning forward type motion, as if ... hiding something or going to get something." The car had a bench seat. Officer Johnson testified that defendant, from his position in the driver's seat, could have leaned over and grabbed the gun, although he would have had to reach between the front passenger's legs to gain access to the gun. "The question of whether a weapon is on or about the person [for purposes of carrying a concealed weapon] is determined by whether it

is in such close proximity to the accused so as to be within his easy reach and convenient control." *State v. Simmons*, 716 S.W.2d 427, 430 (Mo.App.1986). Officer Johnson also testified that all three occupants, including defendant, had "ample opportunity" to put the gun under the seat. When asked about the gun, none of the three occupants said he knew anything about it.

Defendant's argument appears to be that it was more probable that the gun was concealed by Norman Jones based upon the fact that it was recovered underneath his portion of the seat and he dropped his hand down several times after being told by Officer Johnson to keep his hands above the dash. Because of this, the argument appears to be, the arrest of defendant on the weapon charge was without probable cause. Under the facts and circumstances involved, however, we hold that Officer Johnson had probable cause to arrest defendant for carrying a concealed weapon. The facts and circumstances which support this holding are the small confines of the vehicle, defendant was driving the vehicle, the vehicle had a bench seat, defendant made furtive movements toward the floor of the vehicle, the police officer testified that defendant had access to the gun, and none of the three occupants said he knew anything about the gun. Because the arrest was a legal arrest, defendant's argument that the arrest was a pretext to enable the police to search defendant for drugs is without merit. "An arrest has been held to be a pretext when it is ostensibly for one purpose, but in reality is for the primary purpose of furthering an ulterior goal." *State v. Cochran*, 770 S.W.2d 306, 311 (Mo.App.1989). Under these facts it cannot be said that Officer Johnson's arrest of defendant on the charge of carrying a concealed weapon was for the primary purpose of furthering the ulterior goal of searching him for drugs. The evidence is insufficient to support defendant's charge that the arrest was a pretext.

The ensuing search for drugs at the police station was a valid search incident to arrest. "A valid custodial arrest of a suspect authorizes, without more, a search incident to arrest." *State v. Blair*, 691 S.W.2d 259, 261 (Mo. banc 1985), *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987) (citing *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). The search which discovered the cocaine on defendant's person was a valid search incident to a lawful arrest based upon probable cause.

To sustain the trial court's suppression of the cocaine, this court is required to find the evidence sufficient to conclude that the stop, search and arrest were not authorized by law. Because the evidence is insufficient to support such a finding, the order of suppression must be reversed. The trial court's order suppressing evidence is reversed and this cause is remanded with directions to admit such evidence.