### STATE of Missouri, Plaintiff–Respondent,

v.

### Mikael B. DONNELL, Defendant–Appellant.

### No. 17850.

Missouri Court of Appeals,
Southern District,
Division Two.

March 25, 1993.

Marcie W. Bower, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Mikael Donnell guilty of involuntary manslaughter, a Class C felony, and he was sentenced to seven years' imprisonment. Defendant appeals.

In addition to its formal portions, the information charged that on or about April 4, 1991, in Jasper County, Missouri, the defendant "recklessly caused the death of Timothy A. Fry by driving at an excessive rate of speed while trying to evade the Missouri State Highway Patrol."

Defendant does not challenge the sufficiency of the evidence to support the verdict. Defendant's first point is that the trial court erred in overruling his motion to suppress certain statements made by him on April 4, 1991, to Trooper Michael Bryan of the Missouri Highway Patrol because the statements were obtained in violation of defendant's constitutional rights "in that the statements were obtained by custodial interrogation and Trooper Bryan did not advise defendant of his Miranda rights prior to obtaining the statements."

The correctness of the trial court's decision is measured by whether the evidence is sufficient to sustain the findings. *State v. Lanear*, 805 S.W.2d 713, 715 (Mo.App. 1991). This court must determine if the

evidence supports the trial court's ruling on the motion to suppress. The weight of the evidence and the credibility of witnesses are questions for the trial court's resolution. *Id.*

The testimony of state's witness, Trooper Bryan, at the motion to suppress hearing, was essentially the same as he gave at the jury trial. Bryan testified that at 9 p.m. on April 4, 1991, he was on duty, heading west on Route HH in Jasper County. An eastbound vehicle passed him at a rate of speed which he determined by radar to be 80 miles per hour. Bryan activated his red lights and attempted to stop the vehicle. The vehicle accelerated. Bryan made a U-turn and started in pursuit. Bryan reached a speed of 105 miles per hour, but the pursued vehicle was going even faster.

During the three-mile pursuit, the pursued vehicle violated two stop signs located at intersections. Bryan testified: "I did not see the accident occur initially. The accident occurred at County Road 12 and Fir Road, which is a paved road. As we went off the paved portion, it turned into a gravel road. The vehicle I was pursuing hit the gravel portion of the road, which caused a large amount of dust. As I drove into the dust, I slowed down. I never did see the accident because it was so dusty. Once the dust cleared, I observed the vehicle overturned in the field. The two occupants of the vehicle had been thrown out. Defendant was one of those occupants. I ran over to where the two men were lying on the ground. I found Mr. Fry, who appeared to be unconscious and in a very serious condition. Defendant was lying beside him.

Bryan gave the following testimony:

Q. Did you ask Mr. Donnell anything when you approached him?

A. Yes, I asked him who was the driver, and at that time he stated, "I was driving."

Q. Did you Mirandize him prior to asking him that?

A. No, I did not.

Q. Did Mr. Donnell say anything else to you at that point in time?

A. No, he was just concerned about his friend at that time.

Q. And just to make the record clear here, Mr. Donnell was conscious; is that correct?

A. That's correct.

Q. Was Mr. Fry, the passenger of the vehicle, was he conscious at this time?

A. No, he was not.[1]

Q. Now, did Mr. Donnell say anything else to you at that point in time?

A. No, he didn't.

Q. Now, you had occasion to talk to Mr. Donnell, I believe the next day; is that correct?

A. That's correct, at the hospital.

Bryan also testified that prior to interviewing defendant at the hospital on April 5, he gave defendant the Miranda warnings. Defendant's point focuses upon the statement elicited from him at the scene of the accident to the effect that he was driving.

In *Berkemer v. McCarty,* 468 U.S. 420, 433, 104 S.Ct. 3138, 3147[3], 82 L.Ed.2d 317 (1984), the court held that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." The court held that *Miranda* governs the admissibility of statements made during a *custodial* interrogation by a suspect accused of a misdemeanor traffic offense, as well as a suspect accused of a felony traffic offense. The court also held, however, that the roadside questioning of a motorist detained pursuant to a traffic stop does not constitute custodial interrogation for the purpose of the doctrine enunciated in *Miranda.*

In *Pennsylvania v. Bruder,* 488 U.S. 9, 10–12, 109 S.Ct. 205, 206–207, 102 L.Ed.2d 172 (1988), the court gave this summary of its holding in *Berkemer:*

[T]he Court concluded that the "non-coercive aspect of ordinary traffic stops prompts us to hold that persons tempo-

---

1. Fry died a few hours after the accident.

rarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda.*" The Court reasoned that although the stop was unquestionably a seizure within the meaning of the Fourth Amendment, such traffic stops typically are brief, unlike a prolonged station house interrogation. Second, the Court emphasized that traffic stops commonly occur in the "public view," in an atmosphere far "less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." The detained motorist's "freedom of action [was not] curtailed to 'a degree associated with formal arrest.'" Accordingly, he was not entitled to a recitation of his constitutional rights prior to arrest, and his roadside responses to questioning were admissible.

The Court said, 488 U.S. at 10, n. 1, 109 S.Ct. at 207, n. 1:

We did not announce an absolute rule for all motorist detentions, observing that lower courts must be vigilant that police do not "delay formally arresting detained motorists, and ... subject them to sustained and intimidating interrogation at the scene of their initial detention."

Also the Court said, 488 U.S. at 11, n. 2, 109 S.Ct. at 207, n. 2:

Reliance on the Pennsylvania Supreme Court's decision *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980), to which we referred in *Berkemer*, see 468 U.S., at 441, and n. 34, 104 S.Ct., at 3151, and n. 34, is inapposite. *Meyer* involved facts which we implied might properly remove its result from *Berkemer's* application to ordinary traffic stops; specifically, the motorist in *Meyer* could be found to have been placed in custody for purposes of *Miranda* safeguards because he was detained for over one-half an hour, and subjected to questioning while in the patrol car. Thus, we acknowledged *Meyer's* relevance to *the unusual traffic stop that involves prolonged detention.* We expressly disapproved, however, the attempt to extrapolate from this sensitivity to uncommon detention circumstances any general proposition that custody exists whenever motorists think that their freedom of action has been restricted, for such a rationale would eviscerate *Berkemer* altogether. (Emphasis added.)

Outstate cases, decided in the wake of *Berkemer* and arising out of facts similar to those at bar, support the trial court's ruling. *People v. Bellomo*, 10 Cal.App. 4th 195, 10 Cal.Rptr.2d 782 (1992); *DuPont v. State*, 204 Ga.App. 262, 418 S.E.2d 803 (1992); *State v. Seagle*, 96 N.C.App. 318, 385 S.E.2d 532 (1989); *State v. Esser*, 166 Wis.2d 897, 480 N.W.2d 541 (1992).

In *Bellomo*, defendant was convicted of negligently causing bodily injury while driving under the influence of a drug. The accident involved a collision between two parked cars and a moving vehicle jointly owned by defendant and his brother, both of whom were in the front seat. The main issue at trial was whether defendant or a third man was the driver. An officer arrived at the scene. A paramedic told the officer he saw defendant leave the driver's side of the vehicle and walk across the street. The officer, in uniform, saw defendant sitting on a curb, slumped over, and asked him whether he was the driver and whether he had identification. Defendant answered he was not the driver and that he was just walking by. Defendant did not attempt to walk away and, had he done so, the officer would have restrained him. Defendant was later taken into custody. The court held that the questions about defendant's identity and whether he was driving "did not transform the accident in question into custodial interrogation" and that the trial court did not err in admitting defendant's statement to the officer.

In *DuPont*, defendant was convicted of driving under the influence of alcohol. Shortly after midnight, an officer responded to a call concerning an automobile accident. He discovered that a Volkswagen had been driven into the rear of a parked car. The Volkswagen was unoccupied when he arrived, but defendant and another man, who was being treated by emergency rescue personnel, were standing nearby. In response to two questions from the officer, defendant stated he was the owner and driver of the car. Detecting a

strong odor of alcohol emanating from defendant, the officer took him into custody. The court held that the trial court properly admitted the officer's testimony that defendant had admitted driving the car. The court said, 418 S.E.2d at 805–806:

> *Miranda* warnings are not required when a police officer is conducting a preliminary on-the-scene investigation to determine the nature of the situation. Even if the defendant is the focus of investigation, no *Miranda* warning is required when the inquiry is preliminary and has not become accusatory. Here, upon arriving at the scene and observing a wrecked car with no one inside, [the officer] sought to determine the basic circumstances of the situation. He approached and questioned appellant, the first available source of information the officer encountered. He did not take appellant into custody until later. The question at issue thus fell squarely within the category of on-the-scene investigation for which no *Miranda* warning was needed. (Authorities omitted.)

In *Seagle*, at 1 a.m. an officer was called to the scene of an accident. He found an automobile in a ditch with fresh blood and dirt in the interior. There were no persons at the scene. By radio, he determined that the vehicle was registered to Albert Seagle. Another officer was on patrol near the scene and overheard the radio transmission. He saw two men walking along the roadside and stopped them. They had red dirt all over them. When asked what happened, both men responded that they had been in an accident. The first officer arrived at the scene and asked the two men who had been driving. Defendant replied that it was he. The trial court suppressed defendant's statement that he was the driver.

Reversing that holding, the court of appeals said, 385 S.E.2d at 534:

> The facts in *Berkemer* are similar to this case. In *Berkemer*, the defendant was observed by an Ohio State Trooper weaving in and out of a lane of traffic. The trooper followed defendant for a couple of miles and then stopped him. The defendant had difficulty standing and was asked by the trooper to perform a field sobriety test. The defendant was unable to complete the test successfully. The trooper asked defendant whether he had been using intoxicants, and he replied that he had consumed two beers and had smoked several joints of marijuana. Defendant was then arrested and at trial sought to exclude those statements.

> The Supreme Court held that a *Miranda* warning was not required prior to the defendant's arrest in *Berkemer*.

.    .    .    .    .

In the case below, defendant was detained for only a few minutes, on a public thoroughfare, and there were never more than three officers present. The only questions asked were directed to ascertaining the identity of the driver of a wrecked automobile, information necessary for the officer to complete the accident investigation report. At that time, there was no crime investigation underway, no suspects, and no interrogation. We find *Berkemer* controlling and the trial court's conclusion to the contrary erroneous.

In *Esser*, defendant was convicted of homicide by the intoxicated use of a motor vehicle. Two vehicles left a party. One vehicle was driven by defendant and occupied by a passenger, Thomas. The second vehicle was driven by Shanahan. As defendant rounded a corner, his car slid off the roadway and hit a telephone pole. Thomas was killed and defendant was injured. A police officer responded to the accident scene. He asked Shanahan which person was driving the other vehicle. Shanahan responded that defendant was driving. The officer then asked defendant if he was driving and defendant responded, "I think so."

The trial court denied defendant's motion to suppress his statement. Affirming the ruling, the appellate court said, 480 N.W.2d at 541:

> While Esser's injuries certainly limited his mobility and caused him distress, these conditions were not the result of any police conduct. Nor was Esser under arrest or in isolation; the questioning

occurred in a public setting with other witnesses and friends present; and no police trickery or deception was used. Officer Nelson simply asked one of the more obvious and expected questions upon arriving at the scene of an accident—"who was driving?" The *Miranda* Court stated, "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." *Miranda*, 384 U.S. at 477–78, 86 S.Ct. at 1629–30.

Officer Nelson's questioning of Esser was not custodial interrogation. The trial court correctly denied this aspect of Esser's motion to suppress.

Missouri cases which are consistent with the foregoing authorities include: *State v. Crane*, 841 S.W.2d 271 (Mo.App.1992); *State v. Brown*, 814 S.W.2d 304 (Mo.App. 1991); *State v. Cody*, 801 S.W.2d 430 (Mo. App.1990); *State v. Sanad*, 769 S.W.2d 436 (Mo.App.1989); *State v. Pena*, 784 S.W.2d 883 (Mo.App.1990).

In *Crane*, defendant was convicted of driving while intoxicated. Shortly after midnight, Officer Rutledge found defendant's van parked in the middle of an intersection. When the officer arrived, defendant was standing beside Larry Taylor who was lying in the street next to the van on the driver's side. Taylor told the officer that he had been run over. The officer asked defendant for an explanation. Defendant said that he "just drove up on Taylor as he lay in the road, but he drove around him." Asked by the officer whether he had been drinking, defendant responded that he had.

The court of appeals rejected defendant's contention that the trial court should not have allowed the officer to quote any statements defendant made before being advised of his civil rights. The court said that the officer was making a routine on-the-scene investigation and had a right to seek preliminary information from defendant as a potential witness without advising defendant of his rights. The court said, 841 S.W.2d at 273:

A person who is being asked preliminary, investigatory questions by police is not in custody. Even if Rutledge had suspected that Crane had been driving while intoxicated, Crane was not under arrest or otherwise restrained. Rutledge's questions did not constitute a custodial interrogation. Crane was not entitled to an explanation of his civil rights at that point. Moreover, an officer's mere suspicion is not enough to render his questions a custodial interrogation. Because Crane's statements were the product of an investigation rather than an interrogation, the trial court properly allowed Rutledge to testify concerning Crane's statements. (Citing authorities.)

*Brown, Cody, Sanad,* and *Pena*, involved somewhat different factual situations but, on principle, are in accord. In *Brown*, citing *Berkemer*, the court said, 814 S.W.2d at 308–309, that defendant's entitlement to a Miranda warning was conditional upon the existence of both custody and interrogation. The court said that the trooper's inquiry while the defendant was not under arrest or otherwise restrained beyond that usually associated with a routine traffic stop was merely investigatory questioning and no Miranda warning was required. Defendant's first point has no merit.

■ Defendant's second point is that the trial court committed plain error in failing to declare a mistrial, sua sponte. Defendant concedes that the matter has not been preserved for appellate review because no request for a mistrial was made by defendant's trial counsel and no objection was made to the specified testimony on which defendant's second point is based.

On the day following the accident, Trooper Bryan went to the hospital where defendant had been admitted. The trooper gave defendant the Miranda warnings and interviewed him. Defendant makes no claim that his condition was such that he should not have been interviewed. The interview concerned, primarily, the events which happened on the night of the accident, but prior to the time when the trooper began pursuit of defendant's vehicle.

Defendant's second point focuses upon the last question and answer contained in

the following testimony of Trooper Bryan under direct examination by the prosecutor.

Q. Did you ask him if he had stopped at any of the stop signs?

A. Yes, sir.

Q. What did he tell you?

A. He stated no.

Q. Did you ask him how the accident actually happened out there?

A. Yes.

Q. What did he tell you?

A. He stated the car flew when they hit and the rear end started one way and then back the other way, and then it flipped over eventually throwing him out. And that's when he said he went to check on Mr. Fry.

Q. What did he tell you next after this description?

A. He then stated he wasn't driving.

Q. Up until that point in the conversation, was there any doubt or any question about the fact that he was driving the car?

. A. There was no doubt in my mind.

· Defendant's brief says: "[T]he prosecutor deliberately elicited testimony from state's witness Bryan on direct examination regarding his opinion on the ultimate issue the jury was to determine—whether or not defendant committed the charged crime."

Although defendant's trial counsel filed a motion for new trial, setting forth 25 alleged errors, the motion made no mention of the subject matter of defendant's second point. Under Rule 30.20, this court, in its discretion, may consider plain error affecting substantial rights when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. Rule 29.-12(b) contains the same provisions with respect to consideration of plain error by the trial court.

Defendant does not contend that the death of Timothy Fry was not a direct result of the accident. Trooper Bryan was an eyewitness to the material events, except that he did not have direct knowledge of the identity of the driver, as discussed under defendant's first point. This court's examination of the entire record discloses

no plain error. Defendant's second point has no merit.

The judgment is affirmed.

MONTGOMERY, P.J., and GARRISON, J., concur.