**STATE of Missouri, Respondent,**

v.

**Lea Ann DANIELS, Appellant.**

No. 27821.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 2007.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Robert J. (Jeff) Bartholomew, Office of Atty. Gen., Jefferson City, for respondent.

DANIEL E. SCOTT, Judge.

Defendant appeals her conviction for possession of a controlled substance. She challenges the admission at trial of the drugs found in her car. She argues the police lacked reasonable suspicion to detain her for the drug dog sniff that prompted their discovery. We affirm.

■ In reviewing a suppression ruling, we view all evidence and inferences favorable to the ruling, and disregard all contrary evidence and inferences. *State v. Galazin*, 58 S.W.3d 500, 507 (Mo. banc 2001). Furthermore, we must defer to the trial court's factual findings and credibility determinations. *State v. Jones*, 204 S.W.3d 287, 291 (Mo.App.2006). We review under an abuse of discretion standard, and determine only if the ruling is supported by substantial evidence, based on both the record made at the pre-trial hearing and at trial. *State v. Middleton*, 43 S.W.3d 881, 884 (Mo.App.2001). We will not reverse unless the ruling is clearly erroneous, leaving us definitely and firmly convinced a mistake was made. We will affirm the trial court's decision if it is plausible, even if we would have weighed the evidence differently. *Jones*, 204 S.W.3d at 291–92. That said, while we review the facts under a clearly erroneous standard, whether the Fourth Amendment has been violated is a question of law which we review *de novo*. *Middleton*, 43 S.W.3d at 884.

■ Defendant's sole appeal point claims she was unlawfully detained after she refused to let the police search her car. She does not deny probable cause after the drug dog "hit." She claims instead that when she refused a consent search, the police lacked reasonable suspicion to detain her for a drug dog sniff. The salient facts may be summarized as follows.

About 9 p.m. on March 5, 2005, a Wal-Mart security officer called the Ozark police to report suspicious activity on the store's parking lot. He reported a man in a black car had come into the store three times, acting suspiciously, then walked out to a different parked vehicle each time. The security officer suspected drug activity.[1]

Ozark police officers Forrester and Stopka arrived and saw three cars parked together. A black sports car in the middle matched the security officer's description, with a man and woman inside. A woman in a blue car was parked on one side; Defendant in her maroon Buick was parked on the other. Five minutes later, Officer Mayes arrived with his drug dog. Officer Forrester talked with the security guard and confirmed that these were the cars he called about. The officers approached the cars, obtained and checked

---

1. Defendant seeks to characterize the security guard as an informant or anonymous tipster. He better fits the category of "private persons," whose information courts generally have treated as inherently reliable for probable cause/reasonable suspicion purposes, "unless, in the unusual case, there is something in the underlying circumstances that would cause a reasonable person to doubt the report." PHILLIP HUBBART, MAKING SENSE OF SEARCH AND SEIZURE LAW 194 & n. 63 (2005).

the occupants' identification, and asked questions.

The man in the black car, Mr. Warrick, claimed he was looking for a motel room for the night. He said the woman in the blue car had dropped off his girlfriend, a Ms. Maggard, who was now with him in the black car. The woman in the blue car, Ms. Johnson, said she was Maggard's neighbor and had driven her to meet Warrick. Defendant said she was from Springfield and was shopping. Defendant said she had known Warrick a long time, but they were together by mere coincidence. When asked why she wasn't shopping where she lived, Defendant claimed she was bargain-hunting.

The officers ran computer checks, found an outstanding Springfield warrant on Maggard, and arrested her. After being read her *Miranda*[2] rights, she said she did not know Warrick's last name, and had met him just a week earlier. After a search of her purse yielded a bottle with methamphetamine residue, the officers asked to search the vehicles. Since there were three cars and an arrest warrant to deal with, Defendant's car was the last one they got to.

Warrick refused consent to search the black car. Johnson allowed a search, which turned up nothing, and she left. Finally, the police asked to search Defendant's car. She refused, and was told not to leave.

Officer Mayes ran the drug dog around Warrick's car. The dog did not alert, and Warrick was allowed to leave. Officer Mayes ran the dog around Defendant's car and it "hit" twice. The officers performed a hand search inside, finding marijuana cigarettes and several containers of methamphetamine in Defendant's purse. Defendant was arrested for possession of a controlled substance.

Defendant moved to suppress the drugs, claiming the police had no reasonable suspicion to detain her after she denied consent to search her car. The trial court denied the motion after an evidentiary hearing.

Defendant waived jury trial. The parties stipulated that the court could decide the case based on the chemist's report, the police reports, and the record from the suppression hearing. Defendant presented no evidence, but preserved her objection to admission of the drugs on the record and in the stipulation. The court took the case under advisement, found Defendant guilty, and sentenced her to three years in prison.

■ The Fourth Amendment prohibits unreasonable searches and seizures,[3] but is not implicated in every police-citizen encounter. Defendant's appeal involves two categories of police-citizen contact, only one of which triggers the Fourth Amendment.

■ The first category is the consensual encounter, where the police approach a person in a public place, engage in conversation, request information, and the person is free not to answer and walk away. *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). A request to examine identification does not render an encounter nonconsensual. *Florida v. Rodriguez*, 469 U.S. 1, 4–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). Nor does a request to search a

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Missouri's constitutional protections against unreasonable search and seizure (Art. 1, § 15) are coextensive with those of the Fourth Amendment. *State v. Rushing*, 935 S.W.2d 30, 34 (Mo. banc 1996).

person's belongings. *Florida v. Bostick,* 501 U.S. 429, 435, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Consensual encounters do not implicate the Fourth Amendment unless and until the officer, by physical force or show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's requests or terminate the encounter. *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870; *Terry v. Ohio,* 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). If and when that happens, the person is "seized," and for our purposes, the encounter moves into the second category of an investigatory detention or *"Terry* stop."

An investigatory detention falls between a consensual encounter and a formal custodial arrest. Under the Fourth Amendment, it requires the police officer to have reasonable, articulable suspicion that criminal activity is afoot. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). It must be temporary and only long enough to effectuate its purpose, using the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

Defendant's appeal challenges the "reasonable suspicion" basis for any investigatory detention, not the duration thereof, or the existence of probable cause after the drug dog "hit" on her car. Our specific focus, under Defendant's appeal point, is whether the police had reasonable suspicion to detain Defendant after she refused consent to search her car.[4]

The Fourth Amendment requires only "some minimal level" of objective justification for a *Terry* stop. *State v. Lanear,* 805 S.W.2d 713, 716 (Mo.App.1991)(citing Supreme Court authority). The facts and inferences need not rule out all possibilities except criminal activity; the standard is whether a reasonably cautious person would conclude the action taken was appropriate. Id. Reasonable suspicion is determined by the totality of the circumstances—the whole picture—and it is proper "to take into account a police officer's trained instinctive judgment operating on a multitude of small gestures and actions impossible to reconstruct." *Id.* at 716–17. Although reasonable suspicion means more than an "inchoate and unparticularized suspicion or 'hunch,'" it is "considerably less" than a preponderance of the evidence, and "obviously less demanding" than even "a fair probability" or probable cause. *Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581. Moreover,

> "[t]he process does not deal with hard certainties, but with probabilities. Long

---

**4.** At oral argument, Defendant suggested the seizure happened even earlier than her appeal point claims, but appellants may not expand their arguments beyond their points relied on. *See, e.g., Baker v. Empire District Electric Co.,* 24 S.W.3d 255, 257 (Mo.App.2000). At the suppression hearing, defense counsel told the trial court that everything before the police sought consent to search Defendant's vehicle was "completely proper," but reasonable suspicion was necessary to detain her after she refused. We agree Defendant was "seized" then, as she could not reasonably have considered herself free to leave thereafter. *Mendenhall,* 446 U.S. at 553, 100 S.Ct. 1870.

This coincides with Defendant's appeal point, and defense counsel's assertions to the trial court at the suppression hearing. We have reviewed the limited record, and like the Supreme Court in *Terry,* we "cannot tell with any certainty upon this record whether any such 'seizure' took place here prior to" that point, "and we thus may assume that up to that point no intrusion upon constitutionally protected rights had occurred." *Terry,* 392 U.S. at 20 n. 16, 88 S.Ct. 1868. Accordingly, our "reasonable suspicion" analysis occurs at the point when Defendant refused a consent search and was told to stay.

before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers."

*Id.* at 8, 109 S.Ct. 1581, *quoting United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

The favorable evidence and inferences, at the time Defendant refused a consent search, were that Wal–Mart's security officer observed unusual behavior that made him suspicious of criminal activity, particularly drug activity, among a black car and others on his parking lot. It concerned him enough to call the police, who arrived with a drug dog, because that was what they were called about and needed to investigate. The police observed cars parked in a manner described by the security officer. They checked with the security officer, who confirmed that they and he were talking about the same vehicles and occupants. The police talked with the car occupants, who admitted knowing one another. But their explanations for being there and together, in the officers' experience, "did not add up." Then one of the group was found to have an outstanding warrant, and a search incident to that arrest turned up drugs. Suspected drug activity among the group was why the police had been called, and why they brought a drug dog. We acknowledge, as the Supreme Court has, that

> [a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent [behavior]. But we think taken together they amount to reasonable suspicion. We said in *Reid v. Georgia,* [448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890] "there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." Indeed,

*Terry* itself involved "a series of acts, each of them perhaps innocent" if viewed separately, "but which taken together warranted further investigation." We noted in [*Illinois* v.] *Gates[, 462 U.S. 213, at 243-244, n. 13, 103 S.Ct. at 2335, n.13]* that "innocent behavior will frequently provide the basis for a showing of probable cause," and that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion inquiry.

*Sokolow,* 490 U.S. at 10, 109 S.Ct. 1581 (internal citations and footnotes omitted).

Considering the "totality of the circumstances" after drugs were found on one of the group, and taking "into account a police officer's trained instinctive judgment operating on a multitude of small gestures and actions impossible to reconstruct," the trial court could plausibly conclude the police had more than an "inchoate and unparticularized suspicion or hunch" that criminal activity was afoot, and a "minimal level of objective justification" to hold the two cars long enough to run the drug dog (arguably the quickest and least intrusive "search" possible) in aid of their investigation. Thus, the trial court did not err and the evidence was admissible. The judgment and conviction are affirmed.

PARRISH, J., and RAHMEYER, P.J., concur.