STATE of Missouri, Respondent,

v.

Stacey GRAHAM, Appellant.

No. SD 29312.

Missouri Court of Appeals,
Southern District,
Division One.

July 10, 2009.

Petition for Rehearing or Transfer
Denied July 30, 2009.

Margaret M. Johnston, Columbia, for Appellant.

Darrell L. Moore, Prosecuting Atty., and Emily L. Carlstrom, Asst. Prosecuting Atty., for Respondent.

DANIEL E. SCOTT, Presiding Judge.

After a bench trial, Stacey Graham was found guilty of marijuana possession and evidence tampering, both misdemeanors. As to the former, he claims the marijuana should have been suppressed; as to the latter, he challenges the sufficiency of the evidence. We view the evidence most favorably to the trial court's decisions in each respect. *See State v. Daniels*, 221 S.W.3d 438, 440 (Mo.App.2007)(suppression ruling); *State v. Roberson*, 248 S.W.3d 33, 36 (Mo.App.2008)(sufficiency of evidence).

## Facts and Background

This case arises from a traffic stop. Officer John Stuart pulled Graham over for speeding and expired tags. Graham silently offered his driver's license. Realizing that Graham had just gotten out of prison, the officer asked about his car. Still without speaking, Graham handed over rental papers in someone else's name, which the officer recognized as a rising practice among local criminals.

These circumstances, including Graham's unusual refusal to speak, made Officer Stuart "a little bit suspicious." He was an experienced drug investigator who had encountered persons hiding drugs in their mouths ten to twenty times before this case. After stepping to his patrol car to check for warrants (there were none), he returned and asked Graham to step out of his car and talk. As the officer explained in part at trial:

> Just based on his actions when I initially contacted him, his lack of verbal responses, and the history of—or his criminal history that I knew about, I just wanted to talk to him further and just kind of see if I could get any other feel for what was going on.

When Graham's mumbled speech suggested something in his mouth, Officer Stuart asked him to open his mouth. Graham parted his lips slightly, revealing the corner of a plastic baggie containing marijuana.

## Point I—Motion to Suppress Marijuana

■ Point I asserts trial court error in not suppressing the marijuana. Graham claims Officer Stuart extended a valid traffic stop by asking Graham to step out of his vehicle and talk, and that the officer lacked reasonable suspicion to do so. We review a suppression ruling for abuse of discretion and will not disturb it unless we are firmly and definitely convinced it was wrong. *Daniels*, 221 S.W.3d at 440. We will affirm if the record supports the trial court's decision, even if we might have weighed the evidence differently. *Id.*

### Traffic Stops and "Reasonable Suspicion" Extensions

■ A routine traffic stop is a permissible Fourth Amendment seizure for the time necessary to reasonably investigate the traffic violation. *See Arizona v. Johnson*, —— U.S. ——, 129 S.Ct. 781, 784, 788, 172 L.Ed.2d 694 (2009); *State v. Kempa*, 235 S.W.3d 54, 60–61 (Mo.App.2007). Such investigation may include (1) requesting a driver's license, registration, and proof of insurance; (2) asking the driver to sit in the patrol car; (3) questioning the driver about his purpose and destination; (4) running a computer check on the driver and his vehicle; and (5) issuing a warning or citation. *Kempa*, 235 S.W.3d at 61 (citing *State v. Jones*, 204 S.W.3d 287, 292 (Mo.App.2006)).

■ Thereafter, the detainee must be allowed to leave " 'unless specific, articulable facts create an objectively reasonable suspicion' " of criminal activity. *Id.* (quoting *State v. Dickerson*, 172 S.W.3d 818, 820 (Mo.App.2005)). This "reasonable suspicion" is a considerably less demanding standard than a preponderance of the evidence or probable cause,[1] and is based on the totality of the circumstances. *Daniels*, 221 S.W.3d at 442. The facts and inferences therefrom need only permit a rea-

---

**1.** Reasonable suspicion entails some minimal level of objective justification—more than a "hunch," but "considerably less" than a preponderance of the evidence, and "obviously less" than even "a fair probability" or probable cause. *U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

sonable person to conclude that the action taken was appropriate. *Id.* Innocent behavior frequently will give rise to reasonable suspicion sufficient for Fourth Amendment purposes. *Id.* at 443 (citing *Sokolow,* 490 U.S. at 10, 109 S.Ct. 1581 and *Illinois v. Gates,* 462 U.S. 213, 243–244, n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The issue is not whether such conduct proves guilt, but the degree of suspicion it raises. *Id.*; *see also Kempa,* 235 S.W.3d at 62.

██ Graham's refusal to speak, coupled with his criminal history and operation of a car rented under another name, reasonably aroused Officer Stuart's suspicion in their initial contact. His response was progressive and measured. He dealt with silence by asking questions, and with mumbled replies by asking Graham to open his mouth. We cannot fault the officer's actions, and more to the point, we are not firmly and definitely convinced the trial court ruled wrongly. *Daniels,* 221 S.W.3d at 440. Point I fails.[2]

### Point II—Sufficiency of Tampering Evidence

██ Graham was charged with tampering with physical evidence[3] by "con-

ceal[ing] a bag of marijuana with the purpose to impair its availability in a Springfield Police Department drug investigation, an official investigation...." He claims the evidence was insufficient to convict him as charged since the marijuana was in his mouth before any official drug investigation began.[4]

This argument would be more appealing if "conceals" narrowly meant only the initial act of hiding, but we are not so persuaded.[5] When Officer Stuart caught a glimpse of the baggie, he ordered Graham to open his mouth. Graham refused and tried to swallow the evidence instead. Officer Stuart had to squeeze the sides of Graham's neck "to keep him from destroying the evidence," and only with help from additional officers was Graham forced to disgorge the baggie. This was "conceal[ment] ... with purpose to impair [the marijuana's] ... availability in any official proceeding or investigation" as much as the initial act of hiding. We deny Point II and affirm the convictions.

BARNEY and BATES, JJ., concur.

2. Officer Stuart may not have needed reasonable suspicion. The record suggests the challenged conversation was brief and took place while the officer still considered issuing a citation or warning, and perhaps accordingly, before telling Graham that he was free to leave. "Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Arizona v. Johnson,* 129 S.Ct. at 788. An officer's inquiries into matters unrelated to the reason for the stop do not change the stop's legality so long as they do not measurably extend its duration. *Id.*

3. RSMo § 575.100.1(1) (2000) provides in pertinent part that a person commits the

crime of tampering with physical evidence if he "conceals any ... document or thing with purpose to impair its ... availability in any official proceeding or investigation."

4. The record indicates Graham hid the marijuana in his mouth sometime before Officer Stuart initiated contact with him, since Officer Stuart or his partner watched Graham constantly thereafter.

5. "1. to hide; withdraw or remove from observation; cover or keep from sight: *He concealed the gun under his coat.* 2. to keep secret; to prevent or avoid disclosing or divulging: *to conceal one's identity by using a false name.*" RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 422 (2d ed.1998).