**STATE of Missouri, Plaintiff–Respondent,**

v.

**Howard Lee CAIN II, Defendant–Appellant.**

No. SD 29090.

Missouri Court of Appeals, Southern District, Division Two.

May 15, 2009.

Matthew Ward, Office of State Public Defender, Columbia, MO, for Appellant.

Thomas W. Cline, Prosecuting Attorney, Gainesville, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

Howard Lee Cain II ("Defendant") brings this appeal following his conviction, where he was sentenced as a prior offender under section 577.023.1(5).[1] on the charge of driving while intoxicated, in violation of section 577.010.[2] Finding that the trial court plainly erred in sentencing Defendant as a prior offender, this Court reverses and remands for resentencing.

### *Factual and Procedural Background*

On April 6, 2007, off-duty Ozark County reserve deputy Steve Bryant was driving home from Gainesville when he heard radio traffic from the sheriff's office dispatcher advising on-duty Deputy Greg Byerly that dispatch had received a cell phone call from a citizen, identified as Wes Uchtman, reporting a careless and imprudent driver east of Gainesville, driving westbound on Highway 160. The vehicle was described as an older white car with some body damage on it. The caller indicated he was following behind the white car.

When Bryant heard Byerly report that he was four or five miles west of Gainesville, Bryant contacted Byerly to advise him that he was close to Gainesville and would watch for the vehicle. Bryant proceeded to the Lick Creek Bridge and parked on the east side of the bridge, facing eastward. Bryant soon observed a vehicle matching the dispatcher's description followed by another vehicle in which the driver was waving at Bryant and pointing ahead to the white car. Bryant recognized the driver of the second vehicle as Wesley Uchtman. When Bryant contacted Byerly to advise that he had the suspect vehicle in view, Byerly asked Bryant to follow it and detain the driver if he tried to leave the vehicle.

Bryant followed the white car and observed it turn into the Town and Country parking lot and come to a stop. Bryant parked and waited. When the driver exited his vehicle, Bryant observed the driver exhibit what he described as "a staggering gait." Bryant approached the driver, identified himself, and told the driver he was detaining him until another deputy arrived. Bryant detected an odor of intoxicants. A driver's license identified the driver as Defendant. Defendant told Bryant he needed to use the restroom and did not want to wait. Defendant became loud and "a little bit aggressive" before Byerly arrived. Bryant also observed that Defendant's eyes were watery and he was belligerent. Bryant believed that Defendant was intoxicated. Bryant seized the driver's license produced by Defendant and turned it over to Deputy Byerly after he arrived.

When Byerly arrived, he observed Defendant standing outside of his car, "swaying, raising his arms up and using them to balance or putting his fingers on top of the car to keep balance[d]." Defendant's clothing was soiled and "looked like . . . he

---

**1.** References to section 577.023 are to RSMo Cum.Supp.2005.

**2.** References to section 577.010 are to RSMo 2000.

crawled on his hands and knees." When Byerly came closer, he smelled "the odor of intoxicants and another odor that [he] believed to be some sort of a chemical." Byerly attempted to administer three field sobriety tests, but Defendant refused, saying he had to use the restroom and would not be able to pass the tests. When Byerly asked if he had been drinking, Defendant said he had. Byerly arrested Defendant and transported him to Ozark County Jail.

En route to the jail, Defendant "was verbally abusive and made a lot of threats" to Byerly, the courts, and the jail facility. He threatened to stomp Byerly's head and stated that "sooner or later he would just shoot" him. Defendant told Byerly that he was ex-military, and Byerly "didn't know who [he] was fucking with." When they arrived at the jail, Byerly refused to consent to a breathalyzer test. Officers described Defendant as very angry and uncooperative, ignoring questions and refusing to answer. A video recorder routinely utilized at the jail recorded Defendant's actions during the booking process.

Defendant was charged as a prior offender with the class A misdemeanor of driving while intoxicated, pursuant to section 577.010. He was tried by a jury on February 20, 2008. The jury returned a guilty verdict and recommended a sentence of one year in the county jail and a fine in an amount to be determined by the trial court. Defendant was sentenced by the trial court on April 15, 2008, to a term of one-year imprisonment in the county jail, with credit for time served, and a fine of $1,000.00. On that same date, Defendant filed his notice of appeal.

### Discussion

Defendant raises two points on appeal. The State's request, in its respondent's brief, to dismiss the appeal, however, will be addressed first. Then, for ease of analysis, Defendant's points will be discussed in reverse order.

### State's Request to Dismiss Appeal

■ The State filed with this Court a Motion to Dismiss Appeal, contending that Defendant's appeal "is rendered moot by the parties' Stipulation and the Trial Court's Order of October 10, 2008, and that said Appeal should be dismissed." The State claimed that Defendant reneged on the agreement contained in the stipulation and would not allow his attorney to dismiss the appeal "as agreed to prior to the [Defendant's] release." On January 8, 2009, this Court denied the State's motion "without prejudice to the State presenting this issue in its respondent's brief for the Court's consideration[,]" and, if so raised, the State was ordered to file a supplemental record on appeal in support of its argument. On February 17, 2009, the State filed a supplemental legal file containing a Stipulation of the Parties and Order of the trial court.

The supplemental legal file discloses that on October 10, 2008, the State and Defendant, "through counsel," filed a Stipulation of the Parties in the Circuit Court of Ozark County, which reads:

The State of Missouri and [Defendant], through counsel, stipulate that the Court may commute [Defendant's] current sentence to time served, waive any pending fine, and close the case with costs due. In exchange for this outcome, [Defendant] has agreed to waive the appeal currently pending in the Missouri Court of Appeals, Southern District (Southern District Case No. SD 29090).

The stipulation was signed by Defendant's appellate counsel and Ozark County's prosecuting attorney. Typed on the last page of the Stipulation is an Order stating:

"WHEREAS, the parties have requested that [Defendant's] current sentence be commuted to time-served, and fine be waived, and the case be closed with costs due, the sentencing court makes that amendment to the sentence. So ordered this tenth day of October, 2008." The Order was signed by John B. Jacobs, Associate Circuit Judge.

In its respondent's brief, the State again raises this issue by requesting that the appeal be dismissed "pursuant to the Stipulation entered into between the parties." The State does not, however, cite any relevant legal authority supporting this request and makes no citation to any facts in the record supporting a dismissal of the appeal other than the above-mentioned Stipulation signed by Defendant's appellate counsel and the prosecuting attorney and the accompanying trial court Order.

■ A voluntary waiver of a defendant's right to appeal "precludes this court from reviewing the merits of" an appeal. *State v. Green,* 189 S.W.3d 655, 657 (Mo. App.2006). "When a defendant agrees to waive his right to file a motion for new trial and appeal in exchange for a reduced sentence and then receives the 'benefit of the bargain,' an appellate court will not hesitate in holding the defendant to his part of the bargain." *Id.* (quoting *State v. Valdez,* 851 S.W.2d 20, 22 (Mo.App.1993)). While it is well settled that a defendant in a criminal case may voluntarily waive his right to appeal, "[w]e will not deem that right waived 'unless the record, the acts of defendant and all the circumstances are inconsistent with any other interpretation.'" *Id.* (quoting *Edwards v. State,* 569 S.W.2d 779, 780 (Mo.App.1978)). A defendant's voluntary waiver must appear in the record before this Court. *See State v. Reed,* 968 S.W.2d 246, 247 (Mo.App.1998); *Valdez,* 851 S.W.2d at 22.

Defendant was sentenced on April 15, 2008, and filed his notice of appeal on that date. Almost six months later, the parties' Stipulation was filed with the trial court, clearly premised upon the mutual assumption that the trial court had the authority to commute Defendant's jail sentence to time served. This Court concludes that even though the trial court purported to take such action, it had no actual authority to do so. In the absence of such authority, Defendant did not and could not receive the benefit of his bargain to waive his right to appeal. Therefore, Defendant's purported waiver of his right to appeal, based upon a mutual false assumption by the parties as to the trial court's authority to grant Defendant the agreed upon relief, was not and could not have been voluntarily made. This conclusion is based upon the following analysis.

■ "[O]nce judgment and sentencing occur in a criminal proceeding, the trial court has exhausted its jurisdiction. It can take no further action in that case except when otherwise expressly provided by statute or rule. See, for example, Rule 24.035, Rule 29.15 and § 217.775, RSMo 1986." *State ex rel. Simmons v. White,* 866 S.W.2d 443, 445 (Mo. banc 1993). Any judgments or orders entered after judgment and sentencing in the absence of such statute or rule authority have been held to be void. *Id.*

Here, the State fails to direct this Court to any statute or rule authorizing the trial court to commute Defendant's previously imposed jail sentence. This Court's own research discloses that the authority to commute a sentence is constitutionally reserved solely to the Governor. Mo. Const. Art. IV, § 7; *State ex rel. Lute v. Missouri Bd. of Probation and Parole,* 218 S.W.3d 431, 435 (Mo. banc 2007). *See also Ex parte Thornberry,* 300 Mo. 661, 254 S.W. 1087, 1090–91 (1923). The only stat-

ute granting the trial court authority to reduce a previously imposed sentence of imprisonment is section 558.046.[3] This statute applies only in certain narrowly defined situations and is not applicable here because there is nothing in the record supporting that Defendant successfully completed a detoxification or rehabilitation program after the commission of the crime. Section 558.046.2. Similarly, while the trial court had statutory authority to parole Defendant for the balance of his sentence, pursuant to section 559.100, RSMo Cum.Supp.2006, there is nothing in the record before this Court indicating that the trial court took such action. The Stipulation and Order cannot be construed as a parole order because a parole does not alter the sentence previously imposed, as purportedly done by the trial court here.

Absent a sufficient record demonstrating Defendant's intention to voluntarily waive his right to appeal and his actual receipt of the benefit of the bargain giving rise to that waiver, the State's request to dismiss this appeal is denied.

*Point II—Reasonable Suspicion to Stop*

In his second point, Defendant claims "[t]he trial court erred in overruling [Defendant's] motion to suppress, . . . in that Reserve Deputy Bryant's detention of [Defendant] was unlawful because he did not have reasonable suspicion that a crime had been committed," and evidence and statements obtained as a result of the unlawful detention should have been suppressed. Counsel for Defendant filed a pre-trial motion to suppress all evidence obtained as a result of the stop, alleging that the stop was pretextual and illegal, in that there was no evidence that Defendant "engaged in any conduct justifying a traffic stop for careless and imprudent driving."

"A trial court's ruling on a motion to suppress is interlocutory and is subject to change during trial. 'Accordingly, a motion to suppress, in and of itself, preserves nothing for appeal, and ordinarily, a point relied on that refers only to a ruling on such motion is fatally defective.'" *State v. Smith,* 185 S.W.3d 747, 755 (Mo.App.2006) (citing and quoting *State v. Shifkowski,* 57 S.W.3d 309, 316 (Mo.App.2001)). "[A] point relied on attacking the trial court's ruling on a pretrial motion to suppress, without attacking the court's ruling admitting the evidence, is deficient in that it does not identify the actual ruling that is subject to challenge and, therefore, does not preserve the issue for appellate review." *State v. Lloyd,* 205 S.W.3d 893, 900 (Mo.App.2006) (quoting *State v. Wolf,* 91 S.W.3d 636, 642 (Mo.App.2002)). Nevertheless, "appellate courts may exercise discretion and attempt to resolve issues on their merits unless the defective point impedes disposition of the case on its merits. . . . A brief impedes disposition on the merits if it fails to give notice of the basis for the claimed error." *Atkins v. McPhetridge,* 213 S.W.3d 116, 120 (Mo.App.2006) (citing *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo.banc 1997)). Where, as here, Defendant renewed his motion to suppress prior to trial, raised specific objections when Deputies Byerly and Bryant testified at trial, and included the same claim in his motion for new trial, it is clear that the trial court and the State were placed on notice at each critical point in the process that Defendant was challenging the trial court's admission of the evidence as well as the denial of the motion to suppress. Nothing in Defendant's brief impeded the State's ability to address the admissibility of the evidence as well as the denial of the motion to suppress in its brief. Thus, we

---

**3.** References to section 558.046 are to RSMo 2000.

will proceed to address Defendant's point on the basis that Defendant is challenging both the denial of the motion to suppress and the admission of the evidence related to the stop of Defendant by Deputy Bryant.

A hearing was held on Defendant's motion to suppress, wherein defense counsel argued that other than uncorroborated information relayed by dispatch from a citizen identified as Wes Uchtman, there was no evidence that Defendant committed any violation which justified the stop, and any evidence obtained as a result of the improper arrest should be suppressed. The trial court took the matter under advisement and thereafter denied Defendant's motion, finding, in part, that "[t]he citizen's information, which the court deems to be reliable under the totality of the circumstances, provided probable cause for the traffic stop."

Our review is limited to a determination of whether the denial of a motion to suppress is supported by substantial evidence, and we will reverse the trial court's ruling only when we find that ruling is clearly erroneous. *State v. Garriott*, 151 S.W.3d 403, 408 (Mo.App.2004). Only when we are left with a definite and firm belief that a mistake has been made will we deem the trial court's ruling "clearly erroneous." *State v. Renfrow*, 224 S.W.3d 27, 31 (Mo. App.2007). We consider all facts and reasonable inferences in the light most favorable to the trial court's ruling. *Id.* In order to review Defendant's claim, we examine the record from the suppression hearing, in addition to the trial record, deferring to the trial court's factual findings and credibility determinations. *State v. Goff*, 129 S.W.3d 857, 862 (Mo. banc 2004). Review of the determination as to whether an officer had reasonable suspicion to justify a stop is *de novo*. *Id.*

■ "Generally, a warrant based upon probable cause is necessary to justify a search or seizure." *State v. Roark*, 229 S.W.3d 216, 219 (Mo.App.2007). "An exception to this rule exists for what is commonly referred to as a '*Terry* stop.'" *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "In [*Terry* ], the United States Supreme Court recognized that the Fourth Amendment is not offended by a brief investigatory stop by a law enforcement officer who has a reasonable suspicion, based upon specific and articulable facts, that the person stopped is involved in criminal activity." *Roark*, 229 S.W.3d at 219.

■ "It is only at the point that a law enforcement officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen' that a stop has occurred." *Id.* at 220 (quoting *Terry*, 392 U.S. at 29 n. 16, 88 S.Ct. 1868). Physical restraint of the citizen by law enforcement is not necessary, and voluntary compliance with an officer's request can constitute a stop or seizure for Fourth Amendment purposes. *Id.* Restraint of the liberty of a citizen is found in instances where a reasonable person would not feel free to disregard the police and leave. *Id.*

Here, Deputy Bryant exercised his authority when he told Defendant he was to remain by his car and could not go inside the store until Deputy Byerly arrived. Accordingly, this Court concludes that it was at this point in Bryant's encounter with Defendant that Defendant would not have felt free to leave, and a stop or seizure occurred. This conclusion is buttressed by the testimony of Deputy Bryant that he subsequently obtained Defendant's driver's license and turned it over to Deputy Byerly when he arrived.

■ Defendant argues that the State failed to prove that Deputy Bryant had reasonable suspicion for detaining Defen-

dant, in that officers were dispatched based on information provided by a cell phone call from Wesley Uchtman, but neither Uchtman nor the dispatcher were called to testify, and no further evidence concerning Uchtman and his reliability was adduced. Defendant further contends that Deputy Bryant "did not observe, independent of the dispatch, any behavior that would justify the stop."

"Once a seizure has occurred and to constitutionally justify such an action, the police must be able to 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Manley*, 115 S.W.3d at 401 (quoting *Terry*, 392 U.S. at 18, 88 S.Ct. 1868). "If the state fails in this regard, then the evidence collected as a result of the stop must be suppressed pursuant to the fruits of the poisonous tree doctrine." *Id.*

To address Defendant's claim, we must examine what specific and articulable facts were known to Bryant at the time he detained Defendant which would support the proposition that Bryant had developed a reasonable suspicion to believe Defendant was driving while intoxicated. *See Roark*, 229 S.W.3d at 220. "Reasonable suspicion is a less stringent standard than probable cause." *State v. Pike*, 162 S.W.3d 464, 473 (Mo. banc 2005). "Reasonable suspicion may be established with information that is different in amount or content, or that is less reliable, than the evidence required to establish probable cause." *Id.* "The quantity and quality of the information must be considered in the 'totality of the circumstances' to determine whether reasonable suspicion exists." *Id.* "No exact formula exists to define what constitutes reasonable suspicion." *State v. Schmutz*, 100 S.W.3d 876, 880 (Mo.App. 2003). "Each case must be analyzed on its own facts." *Id.* Nevertheless, "[t]he stop must be justified from its inception[.]" *Garriott*, 151 S.W.3d at 408. "The test is one of practical, common sense deduction based on the specific information ... observed by the officer making the stop." *State v. Cobb*, 931 S.W.2d 904, 905 (Mo. App.1996).

"Intoxication may be proven by any witness who had a reasonable opportunity to observe the defendant's physical condition, and intoxication is usually evidenced by unsteadiness on the feet, slurred speech, lack of body coordination and impaired motor reflexes." *State v. Scholl*, 114 S.W.3d 304, 307 (Mo.App.2003).

Here, Deputy Bryant heard the dispatch that Uchtman was following a white car with damage on one side which was being operated in a careless and imprudent manner. Within a very few minutes of the dispatch, Deputy Bryant observed a white vehicle with damage on one side in the general vicinity and traveling in the direction indicated by Uchtman in his call to the dispatcher and as relayed to the deputy by the dispatcher. This vehicle was being followed by a vehicle, which Deputy Bryant observed that Uchtman was driving, with Uchtman waving out the driver's window and pointing to the car in front of him, indicating to Deputy Bryant that the car in front of Uchtman was the car Uchtman was referring to as being operated in a careless and imprudent manner in his original call to the dispatcher. Thus, Uchtman was a known informant to Deputy Bryant, and Uchtman's actions in pointing to the white car in front of him corroborated the information Uchtman had provided to the dispatcher and which was relayed to Deputy Bryant by the dispatcher. These facts provide sufficient indicia of reliability such that it was reasonable for Deputy Bryant to rely upon Uchtman's information. *See Adams v. Williams*, 407 U.S.

143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).

Having observed Defendant drive into the parking lot, park, and exit his vehicle, Bryant observed that Defendant had been driving. In addition, as noted in Bryant's testimony, within a very short time after observing Defendant drive his vehicle and before his stop of Defendant on his way into the store, Deputy Bryant observed Defendant exhibit "a staggering gait" and Defendant's somewhat exaggerated motions. Bryant testified that Defendant "just didn't act like an ordinary person walking around." These observations, coupled with the information received from the known informant, Uchtman, provide specific and articulable facts which give rise to Deputy Bryant's reasonable suspicion that the Defendant operated his vehicle while in an intoxicated condition thereby justifying Deputy Bryant's initial stop of the Defendant on his way into the store to further investigate that suspicion. *Id.*

 The investigatory stop or seizure of Defendant had not yet terminated, *see State v. England,* 92 S.W.3d 335, 341 (Mo. App.2002),[4] when Deputy Bryant thereafter detected a faint odor of intoxicants and observed Defendant's belligerent, combative behavior; watery eyes, and slurred speech. Such observations added to Bryant's reasonable suspicion that Defendant had operated his vehicle in an intoxicated condition and thereby justified the extension of the investigatory detention of Defendant from that point in time until Deputy Byerly could arrive within a very few minutes.

Given the totality of these circumstances, the trial court did not clearly err in denying Defendant's motion to suppress or in admitting the evidence obtained as a result of Deputy Bryant's stop of Defendant. Accordingly, Defendant's second point is denied.

### *Point I—Prior Offender Status*

 Defendant's first point requests plain error review on his claim that the trial court erred in sentencing Defendant as a prior offender under section 577.023.1(5),[5] in that the prior alcohol-related offense upon which his status as a prior offender was alleged occurred over five years prior to the date of the offense charged in the underlying case. Neither party challenged Defendant's alleged status as a prior offender at sentencing, nor was there such a claim raised in Defendant's motion for new trial.

 Under Rule 30.20,[6] "whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Plain error is error which is evident, obvious, and clear. *State v. Stephens,* 88 S.W.3d 876, 881 (Mo.App.2002). Generally, when a defendant has been improperly sentenced as a prior or persistent offender, plain error review is appropriate. *Id.* at 885; *State v. Dixon,* 24 S.W.3d 247, 250 (Mo.App.2000). In any event, here the State concedes that it was plain error for the trial court to sentence Defendant as a prior offender and acquiesces in the reversal and remand for resentencing.

In the underlying case, Defendant was charged, pursuant to section 577.010, with

4. An "investigative detention may only last for the time necessary for the officer to conduct a reasonable investigation[.]" *State v. Watkins,* 73 S.W.3d 881, 883 (Mo.App.2002).

5. References to section 577.023 are to RSMo Cum.Supp.2005.

6. References to rules are to Missouri Court Rules (2008).

operating a motor vehicle on April 6, 2007, while under the influence of alcohol. The misdemeanor information alleged that Defendant "is a prior offender, having been convicted on August 27, 2002, in the Circuit Court, Division 1, Hillsboro, ... Jefferson County, Missouri, for driving while intoxicated." At a hearing on pre-trial motions held February 13, 2008, Defendant's counsel stipulated to the prior conviction of Defendant. During the punishment phase of Defendant's trial, the State offered and the trial court admitted State's Exhibit 4, which was a certified copy of a record of conviction under section 577.010 from Jefferson County Circuit Court. The date of Defendant's prior DWI conviction is noted as August 27, 2002, and this is the date upon which the State relied in alleging Defendant's status as a prior offender. The conduct giving rise to the Jefferson County charge, however, occurred on September 17, 2000.

Section 577.023 provides for enhancement of penalties for certain offenders. A "prior offender" is defined as "a person who has pleaded guilty to or has been found guilty of one intoxication-related traffic offense, where such prior offense occurred within five years of the occurrence of the intoxication-related traffic offense for which the person is charged." Section 577.023.1(5). As Defendant claims, the date of the occurrence of the prior intoxication-related traffic offense, September 17, 2000, is not "within five years" of April 6, 2007, the date of the offense for which Defendant was convicted in the underlying case. Here, as conceded by the State in its brief, plain error has occurred.

> If the error is plain or obvious, then, at the court's discretion, the court may consider whether a miscarriage of justice or manifest injustice will occur if the

error is left uncorrected. Relief under plain error ... requires that Defendant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his [or her] substantial rights.

*State v. Kidd,* 75 S.W.3d 804, 811–12 (Mo.App.2002) (internal citations and quotations omitted). "Indeed, the Missouri Supreme Court has indicated that, to be afforded relief from errors involving the determination of prior offender status, the defendant must have suffered prejudice." *Id.* at 812 (citing *State v. Madison,* 997 S.W.2d 16, 22 (Mo. banc 1999)) ("To be entitled to vacation of sentence and remand, where the irregularity concerns determination of prior offender status, actual prejudice must be established.").

Section 577.010, under which Defendant was charged, provides that "[d]riving while intoxicated is for the first offense, a class B misdemeanor." Section 577.010.2. Under section 558.011.1(6),[7] the authorized term of imprisonment for a class B misdemeanor is "a term not to exceed six months[,]" and under section 560.016.1(2),[8] fines for conviction on a class B misdemeanor may not exceed five hundred dollars. Pertinent here, section 577.023.2 further provides that any person convicted under section 577.010 "who is alleged and proved to be a prior offender shall be guilty of a class A misdemeanor[,]" which carries a maximum authorized term of imprisonment of one year under section 558.011.1(6) and a one thousand dollar fine under section 560.016.1(1). The finding that Defendant was a prior offender increased the maximum authorized term of imprisonment to one year, under section 558.011.1(5), increased the maximum fine

---

7. References to section 558.011 are to RSMo Cum.Supp.2003.

8. References to section 560.016 are to RSMo 2000.

to one thousand dollars, under section 560.016.1(1), and such maximums were actually imposed by the trial court. Both the jail sentence and the fine imposed by the trial court exceeded the maximum allowed for a class B misdemeanor. Defendant has established that he suffered actual prejudice.

Defendant requests remand for a new sentencing hearing. As previously mentioned, the State concedes that Defendant's conviction date of August 27, 2002 was erroneously utilized in proving Defendant's prior offender status and the resulting enhancement of Defendant's sentence, rather than the occurrence date of the offense, September 17, 2000, and that the case should be remanded for resentencing. Defendant's point one is granted.

### *Decision*

The judgment of the trial court is reversed and the case remanded for entry of a conviction of the class B misdemeanor of driving while intoxicated and resentencing in accordance with this opinion.

BURRELL, P.J., and PARRISH, J., concur.