

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
      )
    Plaintiff-Respondent, )
      )
v. )    No. SD32413
      )    Filed: 1-16-14
BRENT LONG, )
      )
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

#### Honorable Daniel W. Imhof, Associate Circuit Judge

### <u>AFFIRMED</u>

Following a bench trial, Brent Long (Defendant) was convicted of driving while intoxicated in violation of § 577.010.[1] Defendant contends: (1) the trial court erred in denying Defendant's motion to suppress evidence collected after an alleged "illegal stop" of Defendant's vehicle; and (2) the evidence was insufficient to support Defendant's conviction. Finding no merit in either contention, we affirm.

Defendant was charged by amended information with driving while intoxicated, and his case was tried to the court. On the day of trial, Defendant filed his motion to

---

[1] All references to statutes are to RSMo Cum. Supp. (2011). All references to rules are to Missouri Court Rules (2013).

suppress. The court ruled that the motion would be taken with the case and decided after trial.

On appeal, we view the evidence and all reasonable inferences derived therefrom in the light most favorable to the verdict; all contrary evidence and inferences are disregarded. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We defer to the fact-finder's "superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *State v. Lopez-McCurdy*, 266 S.W.3d 874, 876 (Mo. App. 2008). Viewed from this perspective, the following evidence was adduced at trial.

The State's first witness was Amber Blevins (Blevins), who gave the following testimony. Sometime between 7:00 and 8:00 p.m. on November 14, 2011, Blevins was driving on West Bypass, in Springfield, Missouri. This particular area of West Bypass has two northbound and two southbound lanes. She noticed a blue Corvette, which was being driven by Defendant, operating erratically ahead of her. She saw that car, which was in the far right lane, swerve onto the shoulder of the road three or four times and nearly touch the grass beyond the shoulder. At the intersection of West Bypass and Sunshine, she observed the blue Corvette stop in the middle of the intersection even though the signal light was green. Blevins called 911 because she believed the driver of the blue Corvette was endangering the lives of other motorists. As the blue Corvette proceeded on West Bypass, Blevins watched it move into the inner lane of the roadway. While traveling in the left lane, the blue Corvette swerved and hit the curb approximately three times. In addition to seeing the car hit the curb, Blevins could hear the tire rubbing against the concrete. While on the phone with 911 dispatch, Blevins described what she was seeing. She provided her name, her vehicle information and the license plate number

2

of the blue Corvette to the dispatcher. When the police arrived, the Corvette did not pull over immediately. Blevins saw the driver attempt to drive away. Blevins remained at the scene until an officer had an opportunity to talk to her.

The State then called Greene County Deputy Sheriff Justin Raynes (Deputy Raynes), who gave the following testimony. On November 14, 2011, Deputy Raynes responded to a dispatch regarding a possibly impaired driver being followed by a citizen. As Deputy Raynes responded, he was provided with a description of the vehicles involved. He was told that the suspect vehicle was a blue Corvette. He also was informed that the citizen caller had seen the blue Corvette stop in the middle of the roadway at some point and run off the roadway numerous times. As Deputy Raynes was driving behind what he thought was the citizen caller's vehicle, he asked dispatch to instruct the caller to pull over. After making this request, the vehicle in front of him pulled to the side of the road. At that point, Deputy Raynes confirmed that the license plate on the blue Corvette matched the number provided to him by dispatch. Deputy Raynes then initiated a traffic stop, and determined that Defendant was the driver and sole occupant of the blue Corvette.

Deputy Raynes detected a moderate odor of intoxicants coming from Defendant's person. Defendant was uncooperative and said he had not been drinking any alcohol that day. Deputy Raynes observed that Defendant's eyes were watery and bloodshot, his speech was slurred and confused, and he had difficulty balancing when he got out of his car. All of these observations were indicators of intoxication. Deputy Raynes had Defendant perform the walk-and-turn test, during which he displayed seven out of eight possible indicators of impairment. Defendant did not appear to be taking the test seriously. Deputy Raynes then had Defendant perform the one-leg-stand test, during

3

which he showed three out of four possible indicators of impairment by putting his foot down during the test, using his arms for balance and hopping on one foot. Once again, Defendant did not appear to be taking the test seriously and "was argumentative during the whole time." Deputy Raynes believed Defendant was intoxicated. Defendant was placed under arrest and transported to the Greene County Jail. Once there, Defendant was advised of the Missouri Implied Consent Law and refused to submit to a breath test.

At trial, Defendant admitted that he had been drinking beer at a restaurant before he was stopped by Deputy Raynes. According to Defendant, he only had two beers and spilled some of it on himself.

At the close of all the evidence, the court took the matter under advisement. Thereafter, the trial court denied the motion to suppress and found Defendant guilty of driving while intoxicated. The court found that Blevins' testimony was "very credible" and relied upon it in making its rulings. Following sentencing, Defendant appealed. Additional facts will be included below as we address Defendant's two points of error.

*Point I*

Defendant first contends the trial court erred in denying the motion to suppress evidence that was collected as the result of an alleged unlawful search and seizure that violated the Fourth Amendment. "In reviewing a suppression ruling, we view all evidence and inferences favorable to the ruling, and disregard all contrary evidence and inferences." *State v. Daniels*, 221 S.W.3d 438, 440 (Mo. App. 2007). This Court defers to the trial court's determination of credibility and factual findings, and will reverse only for clear error. *State v. Goff*, 129 S.W.3d 857, 861-62 (Mo. banc 2004). A ruling is clearly erroneous only when it leaves an appellate court with a definite and firm belief that a mistake has been made. *Daniels*, 221 S.W.3d at 440. While we review the facts

4

under a clearly erroneous standard, whether the Fourth Amendment has been violated is a question of law subject to *de novo* review. **Id**.

"The Fourth Amendment of the United States Constitution preserves the right of the people to be secure against unreasonable searches and seizures." **State v. Miller**, 894 S.W.2d 649, 651 (Mo. banc 1995). Evidence obtained in violation of this protection is inadmissible in state court. **State v. Grayson**, 336 S.W.3d 138, 146 (Mo. banc 2011). "The Fourth Amendment allows, however, a so-called **Terry** stop, which is a minimally intrusive form of seizure or 'semi-arrest' that is lawful if the police officer has a reasonable suspicion supported by articulable facts that those stopped are engaged in criminal activity." **Miller**, 894 S.W.2d at 651; *see* **Terry v. Ohio**, 392 U.S. 1 (1968). Generally, "[a]n anonymous tip by itself seldom, if ever, provides reasonable suspicion that a person has committed a crime warranting a **Terry**-stop." **State v. Weddle**, 18 S.W.3d 389, 393 (Mo. App. 2000). Reasonable suspicion can be established if the officer involved in the stop "independently observed sufficient corroborating information from the prior police communication." **Miller**, 894 S.W.2d at 653. "At a suppression hearing the [S]tate bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." **State v. Franklin**, 841 S.W.2d 639, 644 (Mo. banc 1992).

In denying Defendant's motion to suppress, the court made the following docket entry:

> Defendant files written motion to suppress to be taken with case-in-chief by agreement – evidence heard – court denies Defendant's motion to suppress and finds that the State's witness, A. Blevins was not "anonymous" as argued by defense but a private person whose testimony is considered inherently reliable and that:

5

1. She specifically identified herself, gave specific identifying personal information and specific identifying information about her vehicle, when calling the law enforcement dispatcher on the date in question.

2. She gave specific identifying information about Defendant's vehicle to the dispatcher.

3. She gave specific information to the law enforcement dispatcher about very erratic driving on the part of Defendant's vehicle while following it for a number of miles, approximately half of which was past her planned destination.

4. The arresting officer identified and located both vehicles by the above information and further noted that the witness moved her vehicle from behind Defendant's vehicle when the arresting officer requested her to do so via communication with the dispatcher.

5. She testified at trial.

All of the above was more than enough corroborated information to give the deputy reasonable suspicion, based on articulable facts, to stop Defendant's vehicle at which point the officer noted the odor of alcohol emanating from the Deft and the interior of his vehicle.

On appeal, Defendant claims the trial court clearly erred in denying the motion to suppress because the stop was based solely on an anonymous tip. Based upon that premise, Defendant argues that the State failed to show Deputy Raynes had a reasonable suspicion to justify his stop because: (1) the information provided by the 911 caller was not corroborated; and (2) the deputy did not observe Defendant commit a traffic violation or engage in any other suspicious behavior. We find no merit in this argument.

Defendant's argument is based entirely on his characterization of Blevins as an anonymous tipster, which is simply not true. As the trial court properly found, Blevins was not anonymous because: (1) she identified herself by name to the dispatcher; (2) she identified her own vehicle as well as Defendant's vehicle, including its license plate number; (3) she communicated her observations of Defendant's vehicle while following the vehicle; (4) she pulled over when asked to do so by dispatch, thereby confirming

Deputy Raynes' belief that she was the 911 caller; (5) she remained at the scene until Deputy Raynes talked to her; and (6) she testified at trial.[2] It is difficult to imagine a less anonymous witness. Because Blevins' identity was known, she is best described as a "citizen informant who relates direct observation of the offense" and as such, "may be presumed by the arresting officer to be reliable[.]" *State v. Upshaw*, 619 S.W.2d 925, 927 (Mo. App. 1981); *see Daniels*, 221 S.W.3d at 440 n.1 (named informant was not an "anonymous tipster" but "better fits the category of 'private persons,' whose information courts generally have treated as inherently reliable for probable cause/reasonable suspicion purposes").

Defendant nevertheless argues that Blevins should be considered anonymous because, at the time Deputy Raynes acted on the information she provided, she was not known by Deputy Raynes to be reliable. That argument, however, was rejected in *State v. Shelli*, 675 S.W.2d 79, 81 (Mo. App. 1984). In *Shelli*, the eastern district of this Court specifically held that "[p]revious reliability of an informant is not a prerequisite necessary to establish ... 'reasonable suspicion' for an investigatory stop[.]" *Shelli*, 675 S.W.2d at 81 (citation omitted). There, a caller identified himself by name, stated that two people appeared to be loading their car with marijuana and provided a description of the vehicle. *Id*. at 80. That information was relayed to a state trooper, who stopped a vehicle matching the description provided by the caller. *Id*. The Court found the stop to be justified because the vehicle exactly matched the description given by the caller and was found shortly after the time of the call departing the area where the caller reported to have seen it. *Id*. at 81.

---

[2] The record also indicates Blevins testified at an earlier deposition in the matter.

The case at bar is actually more like ***State v. Cain***, 287 S.W.3d 699 (Mo. App. 2009), a driving-while-intoxicated case in which this Court found reasonable suspicion to justify a stop for reasons similar to those in ***Shelli***. In ***Cain***, a deputy relied on information from a citizen, who called dispatch, identified himself by name and reported "careless and imprudent" driving while following the vehicle in question. ***Cain***, 287 S.W.3d at 701. This Court determined that, because the caller was identified, he was a "known informant," and the deputy need only sufficient indicia of reliability in order to rely on the caller's information. ***Id***. at 706. We found sufficient indicia of reliability because the call itself was corroborated when the deputy saw vehicles matching the descriptions described by the caller and observed the caller waiving and pointing to the car in front of him. ***Id***. Based on these facts, this Court found it was reasonable for the deputy to rely on the information provided by the caller. ***Id***.

Here, like the deputy in ***Cain***, Deputy Raynes located the vehicles matching Blevins' description, and confirmed that Blevins was the caller when she pulled over as requested by dispatch. This constitutes sufficient indicia of reliability for Deputy Raynes to rely on Blevins' information. *See* ***Cain***, 287 S.W.3d at 706; ***Shelli***, 675 S.W.2d at 81. Thus, contrary to Defendant's argument, sufficient corroboration of the call itself was obtained when Deputy Raynes located the vehicles and the caller. Because Blevins was not anonymous, further corroboration of Defendant's erratic driving was not required. Blevins testified at trial, and the court found her testimony to be "very credible." This Court must defer to that credibility determination. *See* ***Goff***, 129 S.W.3d at 861-62; ***Daniels***, 221 S.W.3d at 440. For all these reasons, we are not left with a definite and firm conviction a mistake has been made. Accordingly, the trial court did not clearly err in denying Defendant's motion to suppress. Point I is denied.

Defendant next contends the evidence at trial was insufficient to support his conviction for driving while intoxicated. In finding Defendant guilty of driving while intoxicated, the court made the following docket entry:

> The court further finds the Defendant guilty beyond a reasonable doubt of driving while intoxicated based on the following:
>
> 1. The extremely erratic driving of Defendant as described by Ms. Blevins. Only Defendant's testimony contradicts her testimony and the court notes that the court finds Ms. Blevins' testimony very credible and Defendant's testimony not credible.
>
> 2. The officer's observations and opinion of Defendant's physical condition, odor of alcohol, and unsteadiness.
>
> 3. The fact that Defendant refused the breathalyzer.
>
> 4. That although the officer and the Defendant indicated he did not take the walk-and-turn test and the one-leg stand test seriously, he did not perform these tests correctly. The court does believe that he failed the one-leg test. If he was "not taking [it] seriously", he wouldn't have "hopped" and "put his foot down", both, more than once.
>
> 5. That although Defendant may be naturally a difficult person, the fact that he claims to believe the officer was wasting his time even though he admitted drinking two beers and had spilled same on himself, that the officer had explained the reason for the stop and still did not cooperate would certainly be consistent with impaired judgment by an intoxicated person.
>
> 6. The court does not consider the testimony regarding the horizontal gaze nystagmus test.
>
> 7. The totality of the testimony leaves this court with no reasonable doubt.

In a court-tried criminal case, the court's findings have the force and effect of a jury verdict. Rule 27.01(b); ***State v. Fraga***, 189 S.W.3d 585, 586 (Mo. App. 2006). "Therefore, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same." ***Fraga***, 189 S.W.3d at 586. Our role in reviewing the sufficiency of the evidence to support a criminal conviction is limited to

determining whether there was sufficient evidence from which a reasonable fact-finder could have found each element of the offense to have been established beyond a reasonable doubt. *State v. McLarty*, 327 S.W.3d 557, 562 (Mo. App. 2010). We accept as true the evidence and reasonable inferences derived therefrom that are favorable to the judgment. *State v. McQuary*, 173 S.W.3d 663, 667 (Mo. App. 2005). We disregard all unfavorable evidence and inferences. *Id*. "Great deference is given to the trier of fact, and an appellate court is not to act as a 'super juror' with veto power over a verdict." *State v. Daniels*, 179 S.W.3d 273, 285 (Mo. App. 2005). Therefore, we do not weigh the evidence or determine the reliability or credibility of witnesses. *Id*.

Defendant was convicted of driving while intoxicated in violation of § 577.010. This crime is committed when a person "operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1. Thus, the two essential elements of this crime are: (1) operation of a vehicle; (2) while intoxicated. *See State v. Madorie*, 156 S.W.3d 351, 355-56 (Mo. banc 2005); *State v. Scholl*, 114 S.W.3d 304, 307 (Mo. App. 2003).

In the present case, Defendant does not dispute that he was in operation of a motor vehicle, only that he did so while in an intoxicated condition. The State may meet its burden of proof as to intoxication solely though the testimony of a witness who had a reasonable opportunity to observe the defendant. *State v. Seitz*, 384 S.W.3d 384, 387 (Mo. App. 2012); *Cain*, 287 S.W.3d at 706. Additionally, "[a]ny intoxication that in any manner impairs the ability of a person to operate an automobile is sufficient to sustain a conviction of driving while intoxicated." *State v. Wilson*, 846 S.W.2d 796, 798 (Mo App. 1993).

Here, there was sufficient evidence from which the trial court could have concluded that Defendant drove his vehicle while intoxicated. Viewed in the light most

10

favorable to the judgment, there was evidence that: (1) Defendant drove his vehicle erratically by driving on the shoulder, hitting the curb several times and stopping in an intersection when the signal light was green; (2) he was uncooperative; (3) he had the moderate odor of intoxicants on his person; (4) his eyes were watery and bloodshot; (5) his speech was slurred and confused; (6) he had difficulty balancing upon exiting his vehicle; (7) he denied drinking at first, but then admitted that he drank two beers and spilled beer on himself; (8) he failed the walk-and-turn and one-legged-stand field sobriety tests; (9) Deputy Raynes opined that Defendant was most likely intoxicated at the time of his arrest; and (10) Defendant refused to take a breathalyzer test at the jail. This is sufficient evidence from which a reasonable fact-finder could have found each element of driving while intoxicated beyond a reasonable doubt. *See, e.g.*, **State v. Burks**, 373 S.W.3d 1, 4 (Mo. App. 2012); **State v. Bradley**, 57 S.W.3d 335, 341 (Mo. App. 2001). Point II is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCUR

DON E. BURRELL, J. – CONCUR